587 F.Supp. 330 (1984)
ANHEUSER-BUSCH, INCORPORATED, Plaintiff,
v.
The STROH BREWERY COMPANY, Defendant.
No. 84-908C (A).
United States District Court, E.D. Missouri, E.D.
May 25, 1984.
*331 *332 W. Thomas Hofstetter, Pattishall, McAuliffe & Hofstetter, Chicago, Ill., Rexford Caruthers, Lashly, Caruthers, Baer & Hamel, St. Louis, Mo., for plaintiff.
Michael P. Casey, Lewis & Rice, St. Louis, Mo., James Foster, Davis, Hoxie, Faithful & Hapgood, New York City, for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
Plaintiff, Anheuser-Busch, Incorporated, brought this action on April 18, 1984, against the defendant, The Stroh Brewery Company, for trademark infringement, trademark dilution, and unfair competition, under 15 U.S.C. § 1125(a), and violation of the Missouri anti-dilution statute, 417.061, R.S.Mo. The plaintiff seeks, in part, a permanent injunction with respect to the use of LA as a protectible trademark for one of its beer products.
The plaintiff also filed a motion for a preliminary injunction on April 18, 1984. The parties were before Judge Regan of this Court on April 23, 1984, at which time the parties agreed that the request for a preliminary injunction and the request for a permanent injunction would be heard as one, on the merits, with respect to the permanent injunction, and the case was set for trial on May 7, 1984.
An agreement was entered into between the parties and an order entered on April 23, 1984 with respect to the activities of the parties plaintiff and defendant pending the trial on the merits of the permanent injunction. On April 27, 1984, Judge Regan, on his own motion, with the consent of Judge Harper, transferred this case to Court A of this Court for trial.
On May 7, 1984, the defendant filed its answer and counterclaim, and the hearing was held only on plaintiff's request for a permanent injunction.
This Court has jurisdiction over the matter pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1332 and 28 U.S.C. § 1338.
The pleadings, the testimony, the exhibits and the briefs of the parties disclose the following:
The trial concerns whether plaintiff's use of the term LA as a brand name for its new malt beverage product is protectible under applicable trademark law. Plaintiff is the largest brewer in the United States with its revenue for 1983 exceeding five billion dollars. Defendant is the nation's third largest brewer and is a major competitor of plaintiff in the beer market.
A new category of beer, with a reduced alcohol content, is emerging from the beer industry. The impetus behind this new product are concerns over the health aspects of beer consumption and growing public awareness of the driving-while-intoxicated problem. Defendant alleges that the *333 words "low alcohol"[1] and its acronym "LA," when used with beer, are common descriptive or generic terms, particularly with the brewing industry and with the public, for a beer having an alcoholic content below the range contained in most regular beers manufactured in the United States. Plaintiff maintains that LA is protectible because it is an arbitrary and fanciful name that may be capable of becoming a well-known suggestive mark for a beer containing less alcohol, particularly since plaintiff intends to advertise and promote its new beer as being light in alcohol. (Plff's Complaint, p. 3)
The evidence discloses that the new reduced alcohol beer has been considered for some time by the beer industry as having potential for creating a new market for beer. In fact, two smaller breweries, Hudepohl Brewery and Christian Schmidt Brewing Company, preceded the parties here by having already marketed and sold reduced alcohol beer under the respective brand names of PACE and BREAK.
Plaintiff applied to the U.S. Department of Treasury, Bureau of Alcohol, Tobacco and Firearms (BATF), for an early version of the LA label, and received BATF approval for that label on November 21, 1983. Plaintiff commenced utilization of its LA mark for beer shipped in interstate commerce on December 5, 1983, and on January 20, 1984 plaintiff issued a press release informing the industry and public of its new LA brand beverage. Also on January 20th, plaintiff applied for registration of the mark LA with the United States Patent and Trademark Office.[2] Thereafter, plaintiff commenced further shipments of LA to wholesalers in various states in anticipation of eventually marketing the beer on a national basis. At the time of trial, plaintiff had sold the product in ten test markets. Plaintiff has expended $8,500,000.00 for advertising and promotional expenses for LA and has committed an additional thirteen million dollars for network television advertising.
On March 5, 1984 defendant issued a press release announcing their introduction into "* * * the newest beer category called `Low Alcohol' or `LA'." (Defendant's Exhibit A to Answer & Counterclaim). On March 7, 1984 defendant obtained BATF approval for two separate beer labels, one featuring LA prominently with their product name "Schaefer," and the other featuring LA with the product name "Old Milwaukee." Plaintiff learned of defendant's new label approvals and subsequently contacted defendant, objecting to the labels, and requested that they not be used. On March 26, 1984, defendant announced in a press release that it planned to market its new "Schaefer LA" brand beer. On April 18th, plaintiff filed this action to prevent defendant's use of the mark LA on its label.
It is relevant to note that both companies were prohibited from placing statements concerning alcohol content on labels and in advertising pursuant to Sections 5(e) and 5(f) of the Federal Alcohol Administration Act, 27 U.S.C. § 205(e), (f). However, on April 27, 1984, the BATF issued an industry circular, providing:
"* * * the Bureau has determined that statements of low or reduced alcohol content when used with malt beverage products containing less than 2.5 percent alcohol by volume are not misleading. Since the alcoholic content of regular malt beverages falls within the range of 3.5 to 5.0 percent alcohol by volume, malt beverage products containing less than 2.5 percent alcohol by volume have a substantially lower alcohol content and may accurately be described as low alcohol or reduced alcohol malt beverages." *334 (Dept. of the Treasury, BATF Industry Circular, Number 84-5, April 27, 1984.)[3]
The threshold question in this infringement action is whether the mark LA is protectible from a competitor's use in the marketing and selling of a substantially identical product. A term for which trademark protection is claimed will fall in one of four categories: 1) generic, 2) descriptive, 3) suggestive, or 4) arbitrary and/or fanciful. These categories, like colors in a spectrum, tend to blur at the edges and merge together, making it difficult to apply the appropriate label. WSM, Inc. v. Hilton, 724 F.2d 1320, 1325 (8th Cir.1984); Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1183 (5th Cir.1980). In which category a term falls is an issue of fact. WSM, Inc., supra, 724 F.2d at 1326.
The following definitions of these categories are found in Miller Brewing Co. v. G. Heileman Brewing Co., 561 F.2d 75 (7th Cir.1977), at 79:
"A generic or common descriptive term is one which is commonly used as the name or description of a kind of goods. It cannot become a trademark under any circumstances.
"A merely descriptive term specifically describes a characteristic or ingredient of an article. It can, by acquiring a secondary meaning, i.e., becoming `distinctive of the applicant's goods' (15 U.S.C. § 1052(f)), become a valid trademark.
"A suggestive term suggests rather than describes an ingredient or characteristic of the goods and requires the observer or listener to use imagination and perception to determine the nature of the goods. Such a term can be protected without proof of secondary meaning.
"An arbitrary or fanciful term enjoys the same full protection as a suggestive term but is far enough removed from the merely descriptive not to be vulnerable to possible attack as being merely descriptive rather than suggestive." (Citations omitted.)
Defendant alleges that the phrase "low alcohol" and its acronym "LA" are common and aptly descriptive of a type of beer known and used in the brewing industry and known by the beer consumer for beers that have a reduced alcohol content. As such, defendant contends the term LA is clearly an abbreviation for a generic or common descriptive phrase that "must be treated similarly." National Conference of Bar Examiners v. Multistate Legal Studies, 692 F.2d 478, 488 (7th Cir.1982).
In National Conference of Bar Examiners, plaintiff sought to protect the phrase "Multistate Bar Examination" and its initials "MBE." In rejecting the district court's finding that both names were "merely descriptive" of a characteristic or quality of plaintiff's test (and both terms had secondary meaning which rendered them protectible), the court found the phrase "Multistate Bar Examination," in their view, "the most appropriate way of describing a test prepared for determining the competency of applicants to the bars of the several states." Id. That case is distinguishable from the facts here because plaintiff is not seeking to protect an accompanying phrase, such as low alcohol, light alcohol, less alcohol, light alternative, nor any of a number of word combinations for which the mark LA could stand. And, of course, because of the BATF regulations at the time of its initial label-making decision, plaintiff has not designated on the label what LA does stand for.[4] This Court cannot *335 view the mark LA alone as "the most appropriate way of describing" this new category of beer.
Defendant further argues that the result reached in Miller Brewing Company v. G. Hieleman Brewing Company, supra, compel a finding that the mark LA is generic. The facts in Miller Brewing Company likewise are quite distinguishable from those here. In that case, plaintiff sought to protect its "LITE" trademark from defendant's use of the correctly spelled phonetic equivalent "LIGHT." The court found that "LIGHT" was a term widely used in the beer industry for many years to describe a beer's color, flavor, body, or alcoholic content, or a combination of these or similar characteristics. 561 F.2d at 80. Thus, the term and its phonetic equivalent "LITE" was generic and not protectible. This Court is not dealing with the phonetic equivalent of any words or phrase, but rather with a mark consisting of two letters which are not held out to have any particular meaning on its label. In this Court's opinion, a term should not be equated with generic or descriptive phrases merely because the individual letters of the term may be interpreted to be initials of that generic or descriptive phrase. As explained more fully below, the real test is the consumer's perception of such term.
On the other end of this spectrum of categories to which trademarks apply are terms that are viewed as arbitrary and fanciful. The term "fanciful," as a classifying concept, is usually applied to words invented solely for their use as trademarks. When the same legal consequences attach to a common word, that is, when it is applied in an unfamiliar way, the use is called "arbitrary." Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 11 fn. 12 (2nd Cir.1976). Defendant presented a multitude of evidence of the reduced alcohol beer market in Australia and the use of LA in conjunction with various brand names.[5] Also exhibited at trial were numerous memoranda and communications gained through discovery of plaintiff's internal process of selecting a brand name. This proof establishes that plaintiff anticipated the connection between LA and low, less or light alcohol among consumers in the future. Bolstering this evidence were a number of newspaper and trade journal articles[6] disclosing plaintiff's introduction of the brand name LA with explanations that LA means low alcohol. With this evidence it is difficult to conclude that the term LA is either arbitrary or fanciful when prominently featured on a can or bottle of beer.
If LA is neither a generic term nor one that is arbitrary or fanciful, then it must fall into the merely descriptive or suggestive category. If LA is a descriptive term, then a second meaning must be established by plaintiff for that term to be a protectible trademark. If LA is only a suggestive mark then it is a protectible trademark.
The distinction between a descriptive and suggestive mark may be stated as follows:
"Generally speaking, if the mark imparts information directly, it is descriptive. If it stands for an idea which requires some operation of the imagination to connect it with the goods, it is suggestive." Application of Abcor Development Corp., 588 F.2d 811, 814 (C.C.P.A. 1978); Union Carbide Corp. v. Ever-Ready, Inc., 531 F.2d 366, 379 (7th Cir.), cert. denied 429 U.S. 830 [97 S.Ct. 91, 50 L.Ed.2d 94] (1976).
*336 This test is similar to that propounded by the Second Circuit in Abercrombie & Fitch Co. v. Hunting World, Inc., supra, at 537 F.2d 11:
"A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of the goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods."
A mark that happens to be an abbreviation of a generic or descriptive phrase presents this Court with certain problems because such mark is not held out to stand for any phrase on the label itself. An analogous situation to this case developed before the Court of Custom and Patent Appeals in Modern Optics, Inc. v. Univis Lens Company, 234 F.2d 504 (C.C.P.A. 1956). In Modern Optics, the appellant opposed the registration of the mark "CV" because those initials were alleged to be generally recognized as an abbreviation of, and synonymous with, the words "continuous vision," which in turn, were alleged to be merely descriptive of trifocal lenses. The court found, at page 506:
"However, although we have considered appellant's contentions as to the descriptiveness of the words `continuous vision,' it is not necessary to determine whether those words are merely descriptive of trifocal lenses, since appellee is not seeking registration of those words, but a mark whose dominant feature are the letters `CV.' The letters `CV' are, of course, the initial letters of the words `continuous vision,' and it is possible for initial letters to become so associated with descriptive words as to become descriptive themselves. (Citations omitted.) It does not follow, however, that all initials of combinations of descriptive words are ipso facto unregisterable. While each case must be decided on the basis of the particular facts involved, it would seem that, as a general rule, initials cannot be considered descriptive unless they have become so generally understood as representing descriptive words as to be accepted as substantially synonymous therewith."[7]
The court then went on to find that, "[T]he record is unconvincing that `CV' is a generally recognized term for multifocal lenses and lens blanks," and therefore upheld the trademark's registration. Id.
The descriptiveness of a mark, when applied to the goods involved, is to be determined from the standpoint of the average prospective purchasers. Application of Abcor Development Corp., supra, 588 F.2d at 814. At trial, plaintiff produced a current independent research study[8] of consumer reaction to plaintiff's product and advertising. The study was designed to gather responses of consumers to open-ended questions[9] about the product after being exposed to stimulii relating to the product. The survey was conducted at shopping malls in fifteen cities, eight of which were already test markets for plaintiff's product. Respondents were screened for the proper characteristics[10] and were *337 subsequently divided into two test cells: Those who have not ever seen, heard of, or tried plaintiff's product, and those who have seen, heard of, or tried the product. The researcher's general conclusion was that consumers perceived the LA label to be the brand name of the product and not a generic designation for low alcohol beer. The raw data supports this conclusion.
For example, of those consumers who had not seen, heard of, or tried the product before (226 in number), only a total of 1.3% answered the question, "What type of beer is it," with the response, "low alcohol," after being shown only the can of beer. 2.4% answered "light alcohol," while 1.8% responded with "less alcohol," or something similar.
In comparison, 23.5% answered "Pilsner" (which appeared on the can in small letters), 23% answered "light," 15.9% answered with regular, normal or just beer, 9.7% answered premium, and 10.9% answered, "Don't know."
The responses of those who had ever seen, heard of, or tried LA to the same question, were different, in that 12.5% answered "low alcohol," 5.8% with "light alcohol," 3.3% with "half alcohol," and 2.5% with "less alcohol."
Other responses included 25% for "light," 17.5% "Pilsner," 5.8% "regular beer," 5.8% "LA," 5% "low calorie," 4.2% "premium," 4.2% "Anheuser-Busch," 4.2% "lager," and 10.8%, "Don't know."
The researcher concluded that the difference between these two sets of data basically measured the effect of advertising on those who had ever seen, heard of, or tried the product. Even with the rise of respondents familiar with the product who answered, "low," "less," or "light alcohol," to the question, "What type of beer is it," it is apparent from the study that consumers do not generally recognize the term LA to immediately connote low alcohol when they see such on plaintiff's product. Rather, it is this Court's opinion that the study supports a conclusion that LA, when placed prominently on a can of beer as the sole brand name, stands for an idea which requires some operation of the imagination to connect it with the product, and therefore is suggestive in nature.
The record establishes that the consumer survey was fairly and scientifically conducted by qualified experts and impartial interviewers. The study drew responses from a sample of a relevant portion of potential consumers. The questions, upon which the results relied, do not appear to be misleading or biased. The recordation of responses was handled in a completely unbiased manner. In view of the above, the results and conclusion of the research expert must be accorded relevant weight in determining the descriptiveness of the mark found from the standpoint of the prospective purchasers.
Defendant introduced articles written about the reduced alcohol beer experience in Australia. Although it is conceivable that Australian beer consumers perceive LA as a designation for a category of beer, defendant has failed to show any relevant connection to what prospective consumers' perceptions of LA are in the United States. And, although newspaper articles may provide indicia of a mark's genericness, the articles exhibited show a recognition of LA as a brand name (that the authors present as meaning "low alcohol") and not a generic category name for the whole industry.[11] Defendant also contends that LA will most certainly become a generic category name for reduced alcohol beer in the future. This Court cannot conjure up visions of consumers' perceptions of this new type of beer product one month or a year from now. The relevant time frame for determining a mark's protectibility is the present, not the future. The sum of defendant's evidence fails to contradict the essence of the research study's findings. The weight of credible evidence supports a *338 conclusion that LA, as a brand name for a malt beverage product, is suggestive of a nature or quality of the product and is, therefore, protectible as a valid trademark.
Plaintiff bases its claim for relief upon the Lanham Act, 15 U.S.C. § 1051 et seq., unfair competition, and Missouri's trademark dilution statute. Plaintiff's entitlement to relief stands or falls on its infringement claim, and the unfair competition and trademark dilution claims need not be separately considered. See Vitarroz v. Borden, Inc., 644 F.2d 960, 965 n. 3 (2nd Cir.1981). The Lanham Act provides protection against the use of marks that are likely to cause confusion, cause mistake or to deceive. A trademark is a property right, based on common law, that is acquired through use. Tillamook County Creamery Ass'n v. Tillamook Cheese and Dairy Ass'n, 345 F.2d 158, 160 (9th Cir. 1965), cert. den. 382 U.S. 903, 86 S.Ct. 239, 15 L.Ed.2d 157 (1965). It is generally said that exclusive right to use a mark belongs to the first who appropriates it and uses it in connection with a particular business. Canal Company v. Clark, 80 U.S. 311, 322 (13 Wall), 20 L.Ed. 581 (1871); Sweetarts v. Sunline, Inc., 380 F.2d 923, 926 (8th Cir. 1967), aff'd in part, rev'd in part, 436 F.2d 705 (8th Cir.1971). The record discloses that plaintiff was the first to appropriate and utilize the LA mark in the sales of beer in the United States.
Trademark infringement occurs only when the use sought to be enjoined is likely to confuse purchasers with respect to such things as the product's source, its endorsement by plaintiff, or its connection with the plaintiff. John Deere and Company v. Payless Cashways, Inc., 681 F.2d 520, 524 (8th Cir.1982). "In resolving the issue of infringement, that is, in determining if the prior user of the mark is entitled to protection against a subsequent user, the test universally applied is whether there is a likelihood of confusion among the consumers." Id. Sweetarts v. Sunline Inc., supra, 380 F.2d at 926-27. Among factors to be considered are the similarity in appearance, sound and meaning of the names, and the nature of the goods or services. See New West Corp. v. N.Y.M. Co. of Cal., Inc., 595 F.2d 1194, 1201 (9th Cir.1979).
On the can of defendant's Schaefer beer, the LA mark is the largest and most prominent feature displayed. The same may be said about the label on plaintiff's beer. It is obvious that the products are essentially identical, and that they occupy the same competitive markets. Plaintiff asserts that when a junior user adopts the mark of a senior user for identical goods through the same outlets, then likelihood of confusion may be found as a matter of law. Citing Vitarroz v. Borden, Inc., supra, 644 F.2d at 966. But even in Vitarroz, the court recognized that in contemplating injunctive relief a court must consider the balance of equities and other factors no matter how identical the products or close the proximity of its sales. Id.
The facts reveal that Anheuser-Busch presented the industry with sufficient notice of its selection of a brand name. At that time, defendant, on the basis of marketing considerations, decided to use its established brand name with a category descriptor consisting of the same mark plaintiff was using as a brand name  LA. (Defendant's post-trial brief, p. 18). During testimony, defendant's vice-president of marketing admitted that LA was not now a generic term as far as consumers are concerned, and that if Anheuser-Busch uses LA and several other breweries use it, that it would become generic. (Trial testimony, Hunter Hastings, p. 162-163). It is clear that defendant appropriated the designation LA in order to dilute its distinctiveness in the marketplace, and therefore create confusion in the marketplace between plaintiff's product and defendant's product.
At the time of trial, defendant's product had only been sold in one market, while plaintiff's product occupied ten markets, and had over one million dollars in sales to wholesalers in April. Although defendant is certain to suffer if injunctive relief is granted, injury to plaintiff is inevitable if *339 defendant is allowed to market its product bearing the LA trademark. Because of this inevitable injury to plaintiff's protectible trademark, the balance of equities is in favor of plaintiff.
This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law.
Accordingly, it is ordered, adjudged and decreed that the defendant, The Stroh Brewing Company, its officers, agents, servants, employees, attorneys, and all persons acting under its control, by, through, under or in active concert or in participation with it, be and hereby are permanently enjoined from using in the United States, its possessions and territories, the trademark LA, or any colorable imitation thereof which is likely to be mistaken or confused with plaintiff's LA trademark, and doing any other acts which are likely to cause confusion, mistake or deception with plaintiff, to cause plaintiff's trademark LA to lose its distinctiveness by becoming a generic designation for a type of beer, or to destroy the commercial value of plaintiff's LA trademark.
NOTES
[1] Other phrases mentioned at trial that have the initials LA included: less alcohol, light alcohol, light alternative, and Los Angeles.
[2] No. 461853. An LA label application, No. 462371, was submitted January 23, 1984. The labels submitted prominently displayed LA or L.A., then in smaller type "Beer" and "Anheuser-Busch." The label eventually placed on the can features LA prominently, then a smaller "from Anheuser-Busch" designation.
[3] One of defendant's primary arguments initially was that plaintiff should not be allowed exclusive use of the LA label because such would allow them to, implicitly, place a statement of alcohol content on its labels, while leaving all competitors without a method to convey the low alcohol content on their labels.

Plaintiff countered that, even though, at the time of the approval, BATF regulations prevented statements about alcohol content on labels and in advertising, the BATF's approval of LA as a brand name constitutes a recognition by that agency that LA is not a generic designation for low alcohol beer.
[4] In Kampgrounds of America v. N. Del. A-OK Campground, 415 F.Supp. 1288 (D.Del.1976), aff'd 556 F.2d 566 (3rd Cir.1977), the court held the mark "KOA" protectible as an arbitrary trademark. The court found, "[T]he mark `Kampgrounds of America' is not in issue in this suit. * * * If it were apparent, however, from the manner in which the KOA mark or the KOA mark and logo were displayed that KOA did indeed stand for Kampgrounds of America (for example, if the KOA mark always appeared alongside of the name Kampgrounds of America), then I might be more convinced by defendant's arguments." Id. at 1291-92.
[5] Tooth LA, Resch's Premier L/A, and S.A. Brewing LA Draught.
[6] Articles exhibited included: Business Week (2/6/84); Dallas Times Herald (2/7/84); Ad Week (1/30/84); Ad Day (2/2/84); Philadelphia Inquirer (2/5/84); and Fortune (3/5/84).
[7] See 3 R. Callman, The Law of Unfair Competition, Trademarks and Monopolies, Section 18.10 (4th ed. 1983). "Acronyms, which have become increasingly common in recent years, present special problems. The issue of descriptiveness depends on whether the initials are recognized as equivalent to the full phrase."
[8] The research study was conducted by Dr. Yoram Wind, Professor of Marketing and Management at the Wharton School, University of Pennsylvania. Dr. Wind has considerable expertise and experience in the field of consumer research.
[9] Responses were gathered from the following statements and questions: Please describe the product. What type of beer is it? What is the brand name of this new product? What company produces this brand?

Defendant contended at trial that the questionnaire should have contained the question, What does LA mean? Dr. Wind testified that the question was biased in that it implied that LA was supposed to mean something in the first place.
[10] Each respondent was screened for the following characteristics: Met certain security requirements (not known by interviewer, does not work for a beer manufacturer or distributor, etc.); was of legal drinking age or older and fit within age/sex quotas; has purchased beer; fits income and race quotas; and agrees to participate.
[11] Only after defendant's March 5th press release did articles begin to discuss LA as a possible category label.