**OMAHA NATIONAL BANK, a chartered national banking association, Plaintiff,**

v.

**CITIBANK (SOUTH DAKOTA), N.A., a chartered national banking association, Defendant.**

**No. CV. 85–0–1022.**

United States District Court,
D. Nebraska.

Feb. 27, 1986.

Dennis L. Thomte, Omaha, Neb., for plaintiff.

James B. Gambrell, Houston, Tex., Patrick B. Griffin, Omaha, Neb., for defendant.

## MEMORANDUM AND ORDER

STROM, District Judge.

Plaintiff, Omaha National Bank (ONB), commenced this action on December 9, 1985, against defendant Citibank (South Dakota), N.A. (Citibank), claiming violations of the Trademark Act of 1946, as amended, 15 U.S.C. §§ 1114(1) and 1125(a); state trade name infringement under Neb. Rev.Stat. § 87–216 (1943), as amended; violation of the Nebraska Uniform Deceptive Trade Practices Act, R.R.S. 1943, as amended, § 87–301, et seq.; and common law service mark infringement. ONB presently seeks, among other relief, a permanent injunction against Citibank's use in connection with the advertisement of its Citicard of the designations (1) Now, the bank in your wallet is cash in your hand; (2) At last, a bank that fits in your wallet; and (3) Bank in a wallet. Plaintiff asserts such use is in violation of the above-mentioned rights ONB holds in the trademark/service mark Bank-in-a-Billfold. The plaintiff's mark has been used in connection with the advertisement of its banking

services, as well as its automated teller machine (ATM) access card. In addition to ONB's request for permanent injunction, it also sought a preliminary injunction against Citibank's use of the above-mentioned designations. Citibank requested a consolidation of the preliminary injunction proceeding with a trial on the merits, and the Court granted the same on January 3, 1986 (Filing No. 10). At the request of plaintiff, the pretrial schedule was accelerated to minimize any potential losses due to Citibank's alleged infringement. Even though this matter was accelerated, counsel for both parties greatly assisted the Court through their presentation of the issues surrounding this dispute.

Trial on the merits was held on February 19 and 20, 1986, and following closing arguments was considered submitted for decision. Pursuant to Rule 52, Fed.R.Civ.P., the Court now sets forth its findings of fact and conclusions of law.

This Court has jurisdiction pursuant to 28 U.S.C. § 1338(a) and (b) and 15 U.S.C. § 1121.

The pertinent facts are these. Plaintiff is a chartered national banking association organized under the laws of the United States of America with its principal place of business at 17th and Farnam Streets. Omaha, Nebraska. ONB is a wholly owned subsidiary of FirsTier Bankshares, a Nebraska corporation, which also has its principal place of business in Omaha, Nebraska. The bank first used "Bank-in-a-Billfold as a trade name in the State of Nebraska in 1974, and filed for state registration on February 28, 1974. The registration was subsequently renewed and is presently in effect. The mark has been used over the past twelve years to market ONB's banking services and its ATM access card. The plaintiff submitted a federal service mark registration in 1975 and United States Trademark Registration No. 1,050,931 was issued to the bank on October 19, 1976. The trademark registration allowed ONB to use the composite service mark identified in the registration in connection with banking services. The federal service mark is composite in that it includes the entire design identified in the United States Patent and Trademark Office's principal register, Registration No. 1,050,931. (Plaintiff's Exhibit 4, page 3). The design includes not only the words "Bank in a Billfold," but also the words "The Omaha National Bank" and a border design which resembles that found on currency. The bank's federally registered service mark was placed on its ATM access card and has been used solely in the marketing of that card.

Since ONB received state and federal registration of its marks, the bank has spent approximately $1 million in marketing the access card and services relating thereto, and the customers of plaintiff have used the ATM access card for at least seven million transactions, with a dollar volume of approximately $950 million in deposits and withdrawals. Research indicates that 32.8 per cent of the customers of ONB actually use the "Bank-in-a-Billfold" service and 16 per cent of the bank's customers rely upon the "Bank-in-a-Billfold" service as their primary vehicle for conducting bank transactions. The "Bank-in-a-Billfold" program was so successful that plaintiff has allowed, through license, fifteen to twenty other Nebraska banks the right to use a mark similar to both the state and federal marks in connection with the use of ATM access cards and banking services. An example of five such licensed uses appears in defendant's Exhibit 111.

Citibank is also a chartered national banking association organized under the laws of the United States of America with its principal place of business in Sioux Falls, South Dakota. Defendant entered the Nebraska bank services market in 1984. Thereafter, it began to locally market its Citicard ATM access card and the banking services relating thereto. In conjunction with the Citicard marketing scheme, Citibank began to run advertisements in the Omaha World Herald newspaper as early as April or May, 1984. Advertisements which included designations that allegedly infringed upon ONB's trade-

mark/service mark rights were run in the paper beginning September, 1984. The alleged infringing designations were "Now, the bank in your wallet is cash in your hand," and "At last, a bank that fits in your wallet." The designations were used in World Herald ads a combined total of eight to ten times. In July, 1985, Citibank distributed over 1,500 brochures advertising its Citicard to retail establishments in the Lincoln and Omaha, Nebraska metropolitan areas. The brochures were left at retail establishments for distribution to potential consumers of banking services relating to the Citicard. "Bank in a Wallet" was prominently displayed on the brochure cover. On September 9, 1985 ONB sent a letter to Citibank requesting that it immediately cease and desist in the use of the phrase "Bank in a Wallet" in brochures or advertising material. The request was denied and this suit followed.

■ To evaluate whether a federally registered service mark has been infringed under 15 U.S.C. § 1114, a court must first determine the validity of the mark. Plaintiff's infringement claim will be analyzed only if its mark is valid and protectable. Plaintiff's mark is federally registered on the Principal Register of the United States Patent and Trademark Office for banking services. Under 15 U.S.C. § 1057(b), this registration constitutes prima facie evidence of the validity of the registration, prima facie evidence of plaintiff's ownership of the mark, and prima facie evidence of plaintiff's exclusive right to use the mark. In fact, the composite mark has become incontestable under 15 U.S.C. §§ 1065 and 1115(b). Thus, the composite mark is valid and protectable under the Lanham Act.

■ In order to succeed on its claim of federal trademark infringement, ONB must show that the above-mentioned designations so resemble the registered composite mark that their use is likely to cause confusion, or to cause mistake, or to deceive. *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1090–91 (8th Cir.1980). The resolution of this issue does not hinge on a single factor, but requires a consideration of a number of factors. *Id.* A showing of mere possibility of confusion is not enough; a substantial likelihood that the public will be confused must be shown. *Vitek Systems, Inc. v. Abbott Laboratories, Inc.*, 675 F.2d 190, 192 (8th Cir.1982). Upon evaluation of the factors set forth in SquirtCo., this Court fails to find that there is even a mere possibility of confusion as to the source of services when Citibank's designations are compared to Omaha National Bank's federally registered composite mark. Defendant's designations are mere words while plaintiff's composite mark is a combination of words and design.

■ Plaintiff, however, claims the words "Bank-in-a-Billfold" are the dominant portion of the composite mark and, as such, are protectable apart from the registered mark. The words "The Omaha National Bank" would not be viewed as a dominant portion of the mark because they were disclaimed on the certificate of registration. Counsel, however, failed to cite any case in support of this theory. Indeed, the theory seems to go well beyond the parameters of 15 U.S.C. § 1114(1), which allows redress for infringement of "a registered mark." As such, the Court fails to find an infringement of plaintiff's federally registered composite service mark.

■ The remaining four counts of plaintiff's complaint must also be scrutinized under a two-step analysis. The threshold question under these counts is whether the mark "Bank-in-a-Billfold" is protectable from a competitor's use in the marketing and selling of a substantially identical service. *Anheuser-Busch, Inc. v. Stroh Brewery Co.*, 587 F.Supp. 330, 334 (E.D. Mo.1984), *aff'd*, 750 F.2d 631 (8th Cir.1984). A term for which trademark/service mark protection is claimed will fall in one of four categories: (1) generic; (2) descriptive; (3) suggestive; or (4) arbitrary and/or fanciful. *Id.* These categories, like colors in a spectrum, tend to blur at the edges and merge together, making it difficult to apply the appropriate label. *Id.* (Quoting *W.S.M., Inc. v. Hilton*, 724 F.2d 1320, 1325 (8th

Cir.1984)). Upon evaluation of these categories, this Court finds plaintiff's mark to be neither a generic term nor an arbitrary or fanciful term. A generic or common descriptive term is one which is commonly used as a name or description of the kind of services while an arbitrary or fanciful term is a coined term which in no way describes or suggests the nature of services provided. Thus, plaintiff's mark falls within either the descriptive or suggestive category.

If a term is found to be descriptive, a secondary meaning must be established by the plaintiff for that term to be a protectable service mark. See *Anheuser Busch*, 587 F.Supp. at 335. However, if the mark is found to be suggestive, it is protectable without proof of secondary meaning. The Second Circuit in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 11 (2d Cir.1976), compared the two terms as follows:

> A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of the goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.

Upon application of these two tests to ONB's mark, this Court finds the term to be suggestive and protectable without showing of secondary meaning. Despite defendant's claims that the mark "Bank-in-a-Billfold" is descriptive, it seems apparent to the Court that some imagination is required to reach a conclusion as to the nature of the services provided to a consumer upon use of plaintiff's ATM access card. The mark does not convey an immediate idea of the characteristics of the services to be rendered.

Next, this Court must determine whether Citibank infringed the protectable mark. Again, the essential question in the final four counts of alleged trademark/service mark infringement is whether present consumers or potential consumers are likely to be misled or confused as to the source of the different services. See *W.S.M., Inc.*, 724 F.2d at 1331 (Section 1125(a) claim); *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 n. 7 (8th Cir.1980) (Common law infringement claim); *Dahms v. Jacobs*, 201 Neb. 745, 272 N.W.2d 43 (1978) (State trade name infringement claim); *Kirsch Fabric Corp. v. Brookstein Enter. Inc.*, 209 Neb. 666, 309 N.W.2d 328 (1981) (State deceptive trade practices claim). To determine whether there is a likelihood of confusion present, a court should evaluate the factors outlined by the Eighth Circuit in *SquirtCo.*, 628 F.2d at 1091. The factors are: (1) the degree of care exercised by the consumer when choosing the product or service in question; (2) the instances of actual confusion; (3) Citibank's intent to pass off its services as those of Omaha National; (4) the competitive proximity of the services on which the mark and words are used; (5) the similarity between plaintiff's mark and defendant's designations based on a comparison of the mark and the designations in situ, including their meaning, visual impression and sound; and (6) the strength, including the type, of plaintiff's mark. Moreover, to support its Section 1125(a) claim, ONB must establish that Citibank's use constitutes a false designation of origin or false representation. *W.S.M., Inc.*, 724 F.2d at 1331. This final factor need not be addressed by the Court, however, because it fails to find a likelihood of confusion is caused through defendant's use of the designations in question.

At the outset it seems clear that the two designations used in newspaper advertisements do not present a likelihood of confusion when compared to plaintiff's mark. Any similarity is at best remote. On the other hand, Citibank's use of the designation "Bank in a Wallet" is very similar to plaintiff's use of its mark and demands closer scrutinization.

The testimony and evidence indicates purchasers and potential purchasers of the banking services ONB and Citibank provide through their ATM access cards exercise a relatively high degree of care when choosing between providers of ATM access

cards. The consumers consider, among other things, the type of accounts which can be accessed through the card, whether any of these accounts will bear interest, and the number of locations at which the card can be used. Such care tends to negate any likelihood of confusion caused when individuals view defendant's brochures.

No actual confusion was shown to exist. Actual confusion, however, is not essential to a finding of trademark infringement. Therefore, plaintiff's failure to show actual confusion neither assists nor deters its infringement claims. Plaintiff failed to show intent on the part of Citibank to pass off its services as those of ONB. Thus, this factor in no way influences a finding of likelihood of confusion.

Granted, the services provided by both ONB and Citibank through their ATM access cards are essentially the same, even though the Citicard can also be used as a MasterCard or VISA. An analysis of the final two *SquirtCo.*, factors, however, indicates relatively little, if any, likelihood of confusion exists as a result of Citibank's use of the "Bank in a Wallet" designation. Indeed, plaintiff failed to make the required showing of a substantial likelihood of confusion.

Plaintiff's mark and defendant's designation, when viewed merely in a printed form, are quite similar. Both include the words "Bank In A" and include a fourth term which is virtually synonymous. Both are interchangeable terms for defining a container for cash, credit cards, etc.; but no likelihood of confusion exists when defendant's designation is viewed on the front of Citibank's brochure. The term "Bank in a Wallet" is affixed between a prominent photo of the Citicard being placed in a billfold/wallet and a box containing the words "Citibank Financial Account." It is difficult to imagine how a potential consumer of ATM access card services could be confused as to the source or origin of the services marketed through the brochure.

Finally, this Court finds that the relative strength of plaintiff's mark is insufficient to support its infringement claims. ONB's mark was held to be suggestive when it was determined that the mark was protectable. The strength of the suggestive mark, however, has been diluted through plaintiff's licensing of the mark to other banks. Through licensing, plaintiff has allowed competitors to use a mark or logo similar to ONB's federally registered trademark. The licensees are allowed to use the words "Bank-in-a-Billfold" surrounding by a decorative border. They are also allowed to replace "The Omaha National Bank," which appears in plaintiff's composite mark, with the name of their bank. Thus, the connection between the Bank-in-a-Billfold services and their source, ONB, has been greatly reduced. As a result, consumers of ATM banking services are not likely to confuse the services marketed through Citibank's brochure to those marketed or provided by ONB. Accordingly,

IT IS HEREBY ORDERED that plaintiff's request for injunctive relief is denied and the complaint is dismissed, each party to pay their own costs.