**UNIVERSAL MONEY CENTERS, INC., Plaintiff,**

v.

**AMERICAN TELEPHONE & TELEGRAPH CO., Defendant.**

**Civ. A. No. 90–2201–O.**

United States District Court, D. Kansas.

June 16, 1992.

Terri L. Bezek, James R. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kan., Joseph B. Bowman, J. David

Wharton, Kokjer, Kircher, Bradley, Wharton, Bowman & Johnson, Kansas City, Mo., for plaintiff.

Patrick J. Stueve, Kirk T. May, Stinson, Mag & Fizzell, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant American Telephone & Telegraph Co.'s ("AT & T's") motion for summary judgment (Doc. # 190). For the reasons set forth below, the motion is granted.

### I. Background.

Plaintiff Universal Money Centers, Inc. ("UMC"), is a Missouri corporation with its principal offices in Shawnee Mission, Kansas. UMC provides electronic banking services and contracts with various financial institutions to issue plastic "debit" cards, similar in appearance to credit cards, which are used for accessing automatic teller machines ("ATM's") and for making retail purchases at selected locations.[1] UMC filed this action against defendant AT & T claiming trademark infringement[2] and unfair competition as a result of AT & T's use of the term "Universal" to describe its combination telephone and retail credit card.[3]

At the time it filed its complaint, plaintiff UMC also filed a motion for preliminary injunction in which it sought to enjoin defendant AT & T from using the term "Universal." After conducting a hearing on August 6–7, 1990, the court, in a written memorandum and order, denied plaintiff's motion for preliminary injunction. See *Universal Money Centers, Inc. v. Ameri-*

*can Telephone & Telegraph Co.*, No. 90–2201, 1990 WL 136826 (D.Kan., August 30, 1990).

Because the material facts have not changed substantially since the time of the court's August 30, 1990 memorandum and order, the court finds it unnecessary to recite in detail the factual background of this case. Rather, the court will rely heavily on the lengthy recitation of facts contained in the previous memorandum and order, and, when necessary, will refer to additional facts developed during discovery.

### II. Standards for summary judgment.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at

---

1. UMC owns four trademarks registered on The Principal Register of the United States Patent & Trademark Office: (1) Reg. No. 1,234,866 issued April 12, 1983, for the mark UNIVERSAL MONEY CARD with the words "Money Card" disclaimed; (2) Reg. No. 1,372,964 issued November 26, 1985, for the mark UNIVERSAL MONEY CENTER with the words "Money Center" disclaimed; (3) Reg. No. 1,372,965 issued November 26, 1985, for the mark UNIVERSAL MONEY & Design with the word "Money" disclaimed; and (4) Reg. No. 1,372,966 issued November 26,

1985, for the mark UNIVERSAL MONEY with the word "Money" disclaimed.

2. Plaintiff bases its trademark claims on sections 32(1) (trademark infringement) and 43(a) (false designation of origin) of the Federal Trademark Act, 15 U.S.C. §§ 1114(1), 1125(a), (Lanham Act).

3. AT & T's card is referred to as the "AT & T Universal Card."

2514. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

*III. Discussion.*

Defendant AT & T moves for summary judgment on four issues: (1) corrective advertising; (2) punitive damages; (3) attorney fees; and (4) likelihood of confusion. Because the fourth issue, likelihood of confusion, is dispositive of this action, the court will review only that issue.

In the previous order, the court concluded that plaintiff's marks were valid and protectable under the Lanham Act. In so doing, the court noted that: (1) the defendant did not contest the validity of plaintiff's marks; and (2) the defendant did not dispute the fact that the mark "UNIVERSAL MONEY CARD" has become incontestable under 15 U.S.C. §§ 1065 and 1115(b). Having reviewed the evidence presented by both parties, the court finds no reason to depart from those conclusions.[4]

Notwithstanding the fact that plaintiff's marks are valid and protectable, plaintiff must "still show likelihood of confusion as an element of [its] infringement claim[s]." *Coherent, Inc. v. Coherent Technologies, Inc.,* 935 F.2d 1122, 1124 (10th Cir.1991); *see GTE Corp. v. Williams,* 904 F.2d 536, 539 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 557, 112 L.Ed.2d 564 (1990). Specifically, to prevail on its infringement claims, UMC must prove that AT & T's use of the term "Universal" creates a likelihood of confusion among consumers as to the source of the "AT & T Universal Card." Alternatively, UMC could prove "reverse confusion," that is, that AT & T's use of

the term "Universal" creates a likelihood of confusion among consumers as to the source of UMC's products.[5] *See Big O Tire Dealers v. Goodyear Tire & Rubber Co.,* 561 F.2d 1365, 1371–72 (10th Cir.1977), *cert. dismissed,* 434 U.S. 1052, 98 S.Ct. 905, 54 L.Ed.2d 805 (1978).

Although likelihood of confusion is a question of fact, *Coherent,* 935 F.2d at 1125, "summary judgment is appropriate where there is no genuine dispute about the facts material to the [likelihood of confusion] analysis, and those facts could lead to only one reasonable conclusion." *Lang v. Retirement Living Publishing Co., Inc.,* 759 F.Supp. 134, 137 (S.D.N.Y.1991) (Lang I), *aff'd,* 949 F.2d 576, 582 (2d Cir.1991); *see also Boston Athletic Ass'n. v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989); *Warner Bros. v. American Broadcasting Cos.,* 720 F.2d 231, 246 (2d Cir.1983).

The resolution of the likelihood of confusion issue requires the consideration of the following factors:

(a) the degree of similarity between the designation and the trade-mark or trade name in

 (i) appearance;

 (ii) pronunciation of the words used;

 (iii) verbal translation of pictures or designs involved;

 (iv) suggestion;

(b) the intent of the actor in adopting the designation;

(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;

(d) the degree of care likely to be exercised by purchasers.

*Beer Nuts, Inc. v. Clover Club Foods Co.,* 805 F.2d 920, 925 (10th Cir.1986) (Beer Nuts II). These factors are not exhaustive; the facts of a particular case may require consideration of other additional variables. *Id.*

---

**4.** Because AT & T has not contested the validity of UMC's marks, the court finds it unnecessary to classify them as fanciful, suggestive, or otherwise. *See Beer Nuts Inc. v. Clover Club Foods*

*Co.,* 711 F.2d 934, 939 (10th Cir.1983) (Beer Nuts I).

**5.** This appears to be UMC's strongest argument and the one on which it primarily relies.

## A. Similarity of the marks.

 The similarity of the marks is tested on three levels as encountered in the marketplace: sight, sound and meaning. *Beer Nuts I,* 711 F.2d at 940. In considering the characteristics of the marks, similarities weigh more heavily than differences. *Id.* Further, in evaluating similarity, the court must not engage in a side-by-side comparison. *Id.* at 941. Rather, "the court must determine whether the alleged infringing mark will be confusing to the public when singly presented." *Id.*

In the memorandum and order denying plaintiff's motion for preliminary injunction, the court made the following findings:

The court finds that the degree of similarity between UMC's registered trademarks and the mark "AT & T Universal Card" is minimal. First, although both the AT & T and the UMC marks use the word "universal," the court believes that the dominant portion of each mark is different. Specifically, the court finds that the dominant portion in each of the UMC marks is the word "UNIVERSAL." In contrast, the court finds that the dominant portion of AT & T's mark is the term "AT & T." Second, the marks have different sounds and cadences. Third, the court notes that there are significant differences in the overall design of the two cards, including the lettering styles, logos, and color schemes. Moreover, a significant number of the cards issued by UMC display the name of an affiliate bank on the front of the card, thus further differentiating such cards from the "AT & T Universal Card." Finally, although there was no evidence presented on this matter, the court does not believe that the two marks convey the same idea or stimulate the same mental reaction. *Standard Oil Co. v. Standard Oil Co.,* 252 F.2d 65, 74 (10th Cir.1958).

*Universal Money,* No. 90–2201 (D.Kan., August 30, 1990).

Viewing the evidence in the light most favorable to the plaintiff, the court finds no reason to depart from its previous findings concerning the similarity of the marks. In short, the court finds that reasonable jurors could only conclude that the degree of similarity between the two marks is minimal and that there is little chance that consumers will confuse the marks.

## B. Intent of AT & T in adopting the term "Universal."

In *Beer Nuts I,* the Tenth Circuit discussed at length the "intent" factor:

"Intent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of likelihood of confusion...." (citations omitted). "[P]roof that a defendant chose a mark with the intent of copying plaintiff's mark, standing alone, may justify an inference of confusing similarity." (citation omitted). One who adopts a mark similar to another already established in the marketplace does so at his peril, (citation omitted), because the court presumes that he "can accomplish his purpose: that is, that the public will be deceived." (Citations omitted.) All doubts must be resolved against him. (Citation omitted.)

711 F.2d at 941.

Here, the record is void of any evidence indicating that AT & T chose the term "Universal" with the intent of copying UMC's marks or confusing the public as to the sponsorship or affiliation of its card. Rather, the evidence indicates that AT & T chose the term solely because of its meaning and the positive response it received in research AT & T conducted with its own customers. Accordingly, the court finds no genuine issues of fact with respect to the "intent" factor.

## C. Similarity of the products.

Another relevant factor to be considered in determining whether there is a likelihood of confusion is the similarity between the two products. *Exxon Corp. v. Texas Motor Exchange of Houston,* 628 F.2d 500, 505 (5th Cir.1980). "The greater the similarity between the products and services, the greater the likelihood of confusion." *Id.*

In denying plaintiff's motion for preliminary injunction, the court made the follow-

ing findings concerning the similarity of the parties' products:

> Although the services embodied in the UMC and AT & T cards are similar in certain respects, the court finds that the primary purpose of each card is different. Although the UMC card does allow cardholders to make retail *debit* purchases at limited locations through the Bank-Mate network, the court believes that the primary purpose of the UMC card is to allow cardholders to access cash from ATM's. In contrast, the court finds that the primary purpose of the AT & T card is to allow cardholders to charge, on *credit,* long-distance telephone calls and goods and services. Only as an additional cardholder benefit, does the AT & T card provide ATM access through the "Plus" or VISA" networks. Accordingly, the court concludes that the cards are not directly competitive.

*Universal Money,* No. 90–2201 (D.Kan., August 30, 1990).

As with the factors already discussed, UMC has failed to come forward with any evidence which would persuade the court that its earlier conclusions were erroneous. Although UMC contends that it will soon be offering some form of "Mastercard," such evidence is irrelevant to the inquiry at hand. Specifically, "the intent of the prior user to expand or its activities in preparation to do so, unless known by prospective purchasers, does not affect the likelihood of confusion." *Lang v. Retirement Living Publishing Co., Inc.,* 949 F.2d 576, 582 (2d Cir.1991) (quoting *Restatement (Third) of Unfair Competition* § 21 reporter's note at 210 (Tent.Draft No. 2, 1990)) (*Lang II*). UMC also contends that American Express, a competitor to AT & T, "offers a plastic card which does access bank accounts." However, evidence concerning the products of AT & T's competitors is clearly irrelevant to the question of whether the two products at issue are similar. Finally, UMC contends that the two cards "accomplish the same results" because they both allow consumers to "obtain cash from ATM machines" and "purchase goods and services at the point of sale." The flaw in this argument, the court believes, is that it ig-

nores the critical distinction between the cards: the AT & T card allows consumers to purchase items on credit while the UMC card allows consumers to make deductions directly from their own bank accounts. UMC has offered no evidence which would indicate that consumers are unaware of or indifferent to this distinction.

After reviewing the evidence presented by the parties, the court finds that no genuine issues of fact exist as to the degree of the products' similarity. Specifically, the court finds that reasonable jurors could conclude only that the products are substantially different.

### D. Relation in manner of marketing of the products.

In the previous memorandum and order, the court discussed the means by which the two cards are marketed. In pertinent part, the court reached the following conclusions:

> The court finds that the UMC card and the AT & T card reach the public through significantly different channels. The evidence submitted by the plaintiff indicates that the UMC card is only distributed to persons who have accounts at financial institutions who are affiliated with UMC. Accordingly, to obtain a UMC card, a person must have an account at an affiliate financial institution. The AT & T card, on the other hand, is a "stand-alone" credit card that is distributed to the general public. The court thus concludes that the marketing differences help preclude customer confusion.

*Universal Money,* No. 90–2201 (D.Kan., August 30, 1990).

Again, in responding to the instant motion, UMC has failed to present any evidence which would persuade the court that there is similarity between the methods used to market the two cards. AT & T markets its card, through a variety of media sources, directly to the public. In contrast, UMC markets its services primarily to financial institutions who, in turn, market debit cards to their own account-hold-

ers.[6] In short, UMC's true customers are the financial institutions who utilize UMC's services, rather than the individual cardholders. For these reasons, the court finds no genuine issue of material fact as to the similarity in marketing of the two cards.

### E. Degree of care exercised by consumers.

As the court noted in its previous order, "the degree of care likely to be exercised by purchasers" must be considered in determining the likelihood of confusion. *Beer Nuts II*, 805 F.2d at 925. Inexpensive items which are purchased on impulse or with little care are more likely to be confused than expensive items which are chosen carefully. *Beer Nuts I*, 711 F.2d at 941.

In denying plaintiff's motion for preliminary injunction, the court made the following findings:

The court finds that the products involved in this case are items which are chosen with at least moderate care by the ordinary purchaser. *See Omaha National Bank v. Citibank (South Dakota), N.A.*, 633 F.Supp. 231, 235–36 (D.Neb.1986) (holding that consumers choosing between providers of ATM access cards exercise a relatively high degree of care). Although neither party produced significant evidence on this point, the court believes that, unlike a product which can be purchased on impulse, the UMC card and the AT & T card can only be obtained through a certain amount of effort on the part of consumers. Moreover, the court believes that the average consumer will, at a minimum, read the promotional materials provided by UMC and AT & T before deciding to request one of the cards. Accordingly, the court believes that the average consumer will be aware of the services embodied in whichever card he or she chooses and will be aware of the source of the card.

*Universal Money*, No. 90–2201 (D.Kan., August 30, 1990).

In its motion for summary judgment, AT & T has offered cardholder affidavits which indicate that consumers do, in fact, exercise a high degree of care in choosing a credit card or ATM card. In response, UMC has offered no evidence and simply asserts that AT & T is "asking the Court to usurp the function of the jury with respect to assessing the degree of care which consumers may use in selecting credit cards."[7] Clearly, UMC's response fails to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2514. Accordingly, the court finds no triable issues of fact concerning the degree of care exercised by consumers.

### F. Actual confusion.

In support of its motion for summary judgment, AT & T has offered affidavits, depositions, and survey results which indicate that there is little, if any, actual consumer confusion concerning the source of the two cards at issue.[8] In response, UMC has offered little but allegations and denials. Although UMC alleges that it has identified "at least 400 AT & T cardholders who used the UMC network from April through December, 1990 as a result of some type of confusion," it has offered no consumer affidavits or depositions to support its allegation. Instead, UMC has submitted affidavits from UMC employees who claim to be aware of certain AT & T cardholders who were actually confused. The court finds such evidence less than persuasive in light of the ample time UMC

---

6. Even if a member of the public wanted to obtain a UMC card after seeing a UMC advertisement, he or she would be unable to do so unless his or her bank had contracted with UMC. In contrast, members of the public can obtain an AT & T card directly from AT & T.

7. As noted by AT & T, UMC repeatedly makes this assertion in its response to the motion for summary judgment.

8. In particular, AT & T has offered consumer survey results which indicate that it is extremely unlikely that consumers will make any connection between the two cards at issue.

has had to obtain consumer affidavits or survey results.[9]

Further, although UMC alleges that it has had difficulty obtaining the names of AT & T cardholders, it has clearly had access to its own financial institution customers and their corresponding cardholders. Nonetheless, the record is absent of any information from these sources. Surely, after nearly two years of discovery, UMC would have produced evidence of actual confusion from its own customers if any had existed. *See NEC Electronics v. New England Circuit Sales*, 722 F.Supp. 861, 866 (D.Mass.1989).

In conclusion, the court finds that UMC has failed to come forward with evidence indicating a triable issue of fact on the issue of actual consumer confusion. Although UMC is certainly not obligated to demonstrate actual confusion, the lack of substantial evidence on this issue is one of many factors that suggest that plaintiff's claims are without merit. *Id.*

### G. Strength of the mark.

Although not specifically mentioned in *Beer Nuts II,* the court also finds it appropriate to briefly review the relative strength of UMC's marks.[10] "A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties." *Exxon,* 628 F.2d at 504. Here, UMC has clearly used its marks for a substantial period of time. Nonetheless, the evidence produced by AT & T and uncontroverted by UMC indicates that the term "Universal" is widely used by parties other than UMC. In particular, the term is in use by approximately six financial institutions throughout the country who have used the term on their own ATM cards. The term is also in use by two credit card companies ("Universal Gold Card" and "Universal Premiere Card") who have issued approximately 240,000 credit cards displaying the term. Further, Dun & Bradstreet shows over 200 active businesses employing the term. In short, the term is used by a significant number of entities and is thus a relatively weak mark. *Id.*

### H. Summary.

Nearly two years have passed since the court entertained plaintiff's motion for a preliminary injunction. Notwithstanding a lengthy course of discovery, plaintiff has produced little, if any, substantial evidence on the issue of likelihood of confusion. Instead, plaintiff relies on allegations and its often-repeated argument that the court, by reviewing the above-listed factors, will "usurp the function of the jury." The court finds UMC's allegations without merit. Simply put, the court does not "usurp the function of the jury" by granting summary judgment where, as here, the non-moving party fails to set forth specific facts showing that there is a genuine issue for trial. Viewing the evidence in the light most favorable to UMC, the court finds that no reasonable juror could conclude that UMC has established its federal or state claims.[11] Defendant AT & T is there-

---

**9.** The lack of consumer affidavits is particularly striking in light of the fact that UMC has clearly attempted to contact AT & T cardholders and obtain "statements." In support of its reply brief, AT & T has submitted a copy of a letter and form which UMC sent to AT & T cardholders who had attempted to use their cards in UMC ATM's. The forms, which UMC asked the cardholders to sign, stated as follows:

To Whom It May Concern:
I have used my AT & T Universal Card in a Universal Money ATM machine and my requested transaction was rejected.
At the time I attempted the said transaction, I believed that my AT & T Universal Card would work in the Universal Money ATM because the name "UNIVERSAL" appeared both on my card and the involved ATM machine.

Signed: _____
Dated: _____

As noted by AT & T, UMC has not offered a single signed copy of this form.

**10.** Once again, the court makes no attempt to categorize UMC's marks as fanciful, suggestive, etc.

**11.** In light of the court's findings with respect to plaintiff's infringement and false designation claims, the court finds that plaintiff has failed to demonstrate genuine issues of material fact with respect to its state law unfair competition claim. *See Polo Fashions, Inc. v. Diebolt, Inc.,* 634 F.Supp. 786, 790 (D.Kan.1986).

fore entitled to summary judgment on each of plaintiff's claims.

### IV. Other pending motions.

Also pending at this time are defendant's motion to strike jury demand and plaintiff's motion to compel. Because defendant is entitled to summary judgment on each of plaintiff's claims, the court will deny these remaining motions as moot.

IT IS THEREFORE ORDERED that defendant American Telephone & Telegraph Co.'s motion for summary judgment (Doc. # 190) is granted.

IT IS FURTHER ORDERED that defendant American Telephone & Telegraph Co.'s motion to strike jury demand (Doc. # 189) is denied as moot.

IT IS FURTHER ORDERED that plaintiff Universal Money Centers, Inc.'s motion to compel (Doc. # 207) is denied as moot.