**BEER NUTS, INC.,** Plaintiff-Appellant,

v.

**CLOVER CLUB FOODS COMPANY,** Defendant-Appellee.

No. 85–1525.

United States Court of Appeals, Tenth Circuit.

Nov. 20, 1986.

Robert M. Newbury (Craig S. Fochler and Thomas P. Arden, of Pattishall, McAuliffe & Hofstetter, Chicago, Ill., and Robert R. Mallinckrodt, of Mallinckrodt & Mallinckrodt, Salt Lake City, Utah, with him on briefs), of Pattishall, McAuliffe & Hofstetter, Chicago, Ill., for plaintiff-appellant.

Richard D. Seibel (R. William Johnston, of Christie, Parker & Hale, Pasadena, Cal., with him on brief), of Christie, Parker & Hale, Pasadena, Cal., for defendant-appellee.

Before SEYMOUR, McWILLIAMS and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This is the second appeal in this case involving an alleged trademark infringement. In the first appeal, this court reversed the district court's dismissal of the action and remanded for reconsideration on the issue of the likelihood of confusion between the two trademarks. In the present appeal, we again review the district court's determination that there is no likelihood of confusion between the two marks.

Beer Nuts, Inc. (Beer Nuts) is the successor to a business begun in 1953 for the marketing and sale of sweetened, salted peanuts and cashews under the name BEER NUTS. BEER NUTS was registered as a trademark in 1955 and became incontestable under 15 U.S.C. § 1065 in 1960. Clover Club Foods Company (Clover Club) was a distributor for Beer Nuts in the mountain states from 1959 until 1974. From 1974 to 1978, Clover Club sold sweetened, salted peanuts manufactured by another company under the name BREW-BERS. In 1977, Clover Club decided to market sweetened, salted peanuts under its own trademark. Clover Club calls its product BREW NUTS and displays those words along with an overflowing stein on the front of the package. Clover Club also uses a smaller CLOVER CLUB trademark on the front of the package. Clover Club began selling BREW NUTS in 1978. Both the BEER NUTS and BREW NUTS packages are cellophane and are similar in size and shape. The marketing and advertising techniques are the same for both products.

Beer Nuts sued Clover Club alleging trademark infringement. Clover Club counterclaimed, seeking a declaration that the registered trademark BEER NUTS is void. After a bench trial on the merits, the district court ruled that Clover Club had not used BREW NUTS as a trademark but merely as a description of its product and that there was no likelihood of confusion concerning the origin of the competing products. Thus, Clover Club had not infringed Beer Nuts' trademark. The district court denied Clover Club's counterclaim that the BEER NUTS trademark is

void. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 520 F.Supp. 395 (D.Utah 1981).

 On appeal, this court reversed and remanded the case. We found that Clover Club used the BREW NUTS logo not as a descriptive term but as a trademark. We also held that the district court erred in finding no likelihood of confusion based solely on a side-by-side comparison of the similarity between the BEER NUTS and BREW NUTS packages. We outlined the relevant factors in determining likelihood of confusion as to the source of the products and remanded for reconsideration of this issue under the legal standards set forth in our opinion. We upheld the district court's determination that the term BEER NUTS is not generic but rather a descriptive term with secondary meaning, and therefore the BEER NUTS trademark is not void.[1] *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934 (10th Cir.

1983). On remand, the district court found that Clover Club's use of the words BREW NUTS together with a picture of an overflowing stein does not create a likelihood of confusion with the BEER NUTS trademark and thus Clover Club has not infringed the BEER NUTS trademark. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 605 F.Supp. 855 (D.Utah 1985). We reverse the decision of the district court and remand for determination of the relief to be granted in accordance with this opinion.[2]

## I.

The question that the district court faced on remand was whether Clover Club's use of the words BREW NUTS with an overflowing stein as a trademark constitutes infringement of the BEER NUTS trademark. In our initial consideration of this case, we set forth specific legal standards

---

1. The district court denied Clover Club's claim to strike the BEER NUTS trademark registration on the basis of fraud. However, the district court made no findings or conclusions on this issue to indicate the factual and legal bases for its decision. We directed the district court on remand to make findings of fact and conclusions of law on the question whether the BEER NUTS trademark was obtained fraudulently. 711 F.2d at 942–43. On remand, Clover Club dropped its contention that Beer Nuts' trademark should be cancelled for fraud. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 605 F.Supp. 855, 857 (D.Utah 1985).

2. In this circuit, likelihood of confusion is a question of fact subject to the clearly erroneous standard of review. *J.M. Huber Corp. v. Lowery Wellheads, Inc.*, 778 F.2d 1467, 1471 (10th Cir. 1985); *Hot Shot Quality Prod., Inc. v. Sifers Chem., Inc.*, 452 F.2d 1080, 1081 (10th Cir.1971). In the present case, however, the district court's factual findings were premised on an erroneous interpretation of the scope of protection to which the BEER NUTS trademark is entitled. Ordinarily, when presented with a trademark case involving both questions of law and questions of fact, we review the legal questions *de novo* and, if there are legal errors, we remand the case for further factual determinations. 711 F.2d at 942. Some reviewing courts do not remand the case in such a situation but instead decide the issue of likelihood of confusion as a matter of law. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 650–51 (6th Cir.) (citing *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440,

443–44 (9th Cir.1980)), *cert. denied*, 459 U.S. 916, 103 S.Ct. 231, 74 L.Ed.2d 182 (1982) (White, J., dissenting on the ground that there is a split in the circuits as to whether a district court's finding of likelihood of confusion is reviewable under the clearly erroneous standard as a question of fact or *de novo* as a question of law).

Generally, we do not agree with the position taken by courts that treat the issue of likelihood of confusion as a matter of law; we favor remand to the district court for determination of this issue as a question of fact. 711 F.2d at 942. However, in the present case, we are faced with an unusual situation. This is the second appeal in the case. The district court has already been instructed as to the applicable law and has failed to properly apply it. There is no dispute regarding the underlying facts. Therefore, under the circumstances of this case, we decline to remand the case a second time, and instead decide the likelihood of confusion question. *Cf. McCord v. Bailey*, 636 F.2d 606 (D.C.Cir.1980), *cert. denied*, 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981) (although inadequate findings and conclusions may be remanded to district court for supplementation, appellate court will not remand for more specific findings if doing so will consume judicial resources without serving any purpose); *Chamberlain v. Kurtz*, 589 F.2d 827 (5th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979) (although provision of the Internal Revenue Code was amended after district court entered its order, appellate court declined to remand and instead decided the matter in the interest of judicial economy and efficiency).

that were to govern the factual analysis by the district court. These legal standards are premised upon the findings that the BEER NUTS trademark is incontestable and, as a matter of law, Clover Club used the words BREW NUTS with a picture of an overflowing ·stein as a trademark. 711 F.2d at 937–38. Important legal consequences flow from these findings. The district court's initial error seems to stem from a misunderstanding of those consequences.

The purpose of a trademark is to identify a producer's goods and distinguish them from those of other producers. *Id.* at 939. In our previous opinion, we discussed the four types of marks: generic, descriptive, suggestive and arbitrary or fanciful. *Id.* at 939–40; *see also Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178, 1183 (5th Cir.1980), *cert. denied,* 450 U.S. 981, 101 S.Ct. 1516, 67 L.Ed.2d 816 (1981). The trademark protection afforded each type of mark is related to how closely the mark identifies the source of the product. "Because a generic mark refers to a general class of goods, it does not indicate the particular source of an item. Consequently, such a mark receives no legal protection and may not be registered alone as a trademark." 711 F.2d at 939. At the other end of the spectrum, suggestive and fanciful marks may be registered without proof that they identify the source of the product. *Id.* Descriptive terms fall in the middle on the continuum.

Because a descriptive term is one which a competitor would likely need to use in describing his product, the term does not indicate that a product comes from a single source. Therefore, a trademark that is descriptive may be registered only if it has acquired a secondary meaning by becoming "distinctive of the applicant's goods in commerce."

*Id.* at 939–40 (footnote and citations omitted).

A registered trademark, even a descriptive mark, may become incontestable if it has been in continuous use for five years following the date of its registration. 15 U.S.C. § 1065. Once a mark has become incontestable, its registration constitutes "conclusive evidence" of the holder's right to use the mark.[3] *Id.* An "incontestable" mark cannot be challenged as lacking secondary meaning; such marks are conclusively presumed to be nondescriptive or to have acquired secondary meaning. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 105 S.Ct. 658, 661–63, 83 L.Ed.2d 582 (1985); *Soweco,* 617 F.2d at 1184–85; *Union Carbide,* 531 F.2d at 377.

It is unchallenged that BEER NUTS was registered as a trademark in 1955 and has become incontestable under 15 U.S.C. § 1065. Thus, even if the words BEER NUTS can be considered descriptive of the product, the BEER NUTS mark is presumed to have secondary meaning; the mark identifies to consumers the source of the product. It cannot now be challenged as descriptive.[4]

Under the Lanham Act, use of a mark constitutes infringement of a registered trademark and leads to liability if it "is likely to cause confusion" in the marketplace concerning the source of the different products. 15 U.S.C. § 1114(1)(a); *see also* 711 F.2d at 940 (citing *Vitek Systems, Inc. v. Abbott Laboratories,* 675 F.2d 190, 192 (8th Cir.1982)). Thus, the district

---

**3.** The registrant's exclusive right to use an incontestable mark is subject to several defenses including use, other than as a trade or service mark, of "a term or device which is descriptive of and used fairly and in good faith only to describe to users the goods or services ... or their geographic origin...." 15 U.S.C. § 1115(b)(4). Under the law of the case, Clover Club used the words BREW NUTS with an overflowing stein as a trademark, 711 F.2d at 938, and thus this defense is not available to Clover Club in this appeal, *see James Burrough Ltd. v.*

*Sign of the Beefeater, Inc.,* 572 F.2d 574, 577 (7th Cir.1978).

**4.** Trademarks that have become generic are subject to cancellation even if they have acquired secondary meaning. 15 U.S.C. § 1064(c); 711 F.2d at 939. Under the law of the case, the BEER NUTS mark is not generic, 711 F.2d at 942, and thus cannot be challenged on that basis in this appeal, *see James Burrough Ltd.,* 572 F.2d at 577.

court's inquiry on remand should have been whether Clover Club's use of the words BREW NUTS with an overflowing stein as a trademark is likely to cause confusion in the marketplace as to the source of BREW NUTS and BEER NUTS.

The district court's factual inquiry should have been premised upon treating both the BEER NUTS and the BREW NUTS marks as trademarks identifying the source of the products for the purpose of Lanham Act protection. Instead, the district court erred in again assessing the proper legal status of the trademarks. The district court engaged in a lengthy analysis of whether the two marks identify source or use of the products. 605 F.Supp. at 860. That inquiry was inappropriate because the legal status of the marks had already been determined. This failure to base its analysis on the proper legal standard regarding the scope of protection afforded the BEER NUTS mark led the district court to reach erroneous factual conclusions regarding likelihood of confusion.

## II.

In our previous opinion, we set forth the factors to be considered in determining whether there is a likelihood of confusion between the two marks. Although the list is not exhaustive and no one factor is determinative, the following criteria should be used as a guideline:

"(a) the degree of similarity between the designation and the trade-mark or trade name in
(i) appearance;
(ii) pronunciation of the words used;
(iii) verbal translation of the pictures or designs involved;
(iv) suggestion;
(b) the intent of the actor in adopting the designation;
(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;
(d) the degree of care likely to be exercised by purchasers."

711 F.2d at 940 (quoting Restatement of Torts § 729 (1938)). It must be stressed that these factors are interrelated and must be considered as such in assessing likelihood of confusion. For example, a small degree of similarity between two marks may lead to a finding that confusion is likely when the products are identical, inexpensive items. On the other hand, very similar marks may not generate confusion as to the source of the products where the products are very different or relatively expensive.

The district court considered the appropriate factors in its analysis of the likelihood of confusion, but because it did not afford the BEER NUTS trademark the scope of protection to which it is legally entitled, its analysis was erroneous. The district court also failed to follow the instructions in our prior opinion as to how these factors should be evaluated.

## A.

In our prior opinion, we held that marks may be confusingly similar if, as entities, they look or sound similar or convey the same idea or meaning. We directed the district court to consider appearance, pronunciation of the words used, verbal translation of the pictures or designs involved, and suggestion. These factors are not to be considered in isolation; they must be examined in the context of the marks as a whole as they are encountered by consumers in the marketplace. Similarities are to be weighed more heavily than differences, especially when the trademarks are used on virtually identical products packaged in the same manner. 711 F.2d at 940–41.

The district court erred in focusing almost exclusively on the differences between the trademarks. The district court found that the BEER NUTS and BREW NUTS trademarks are not similar in appearance because the words do not look alike, the meaning of the word "brew" is broader than the word "beer," and the Clover Club trademark appears on the BREW NUTS package. The district court also

found that the words in the trademarks are not similar in pronunciation and that Clover Club's use of the overflowing stein with the words BREW NUTS does not give rise to a verbal translation that equates BEER NUTS with BREW NUTS. 605 F.Supp. at 860.

Although there are clearly differences between the marks, the phonetic and semantic similarities outweigh these differences. The words "brew" and "beer" are not identical, but they have a similar sound. They are both one syllable words having four letters three of which are the same, and they both begin with the same letter. Moreover, the evidence shows that the word "brew" is a common synonym for "beer." Clover Club's marketing manager admitted at trial that the word "brew" in Clover Club's mark connotes "beer." Because Clover Club joined the term "brew" with a representation of a stein which has an overflowing head of foam, the word "brew" in Clover Club's trademark cannot reasonably be taken to mean coffee or tea or beverages in general; it can only be understood to mean beer. BREW NUTS thus necessarily conveys the same meaning or idea as BEER NUTS. The presence of the smaller Clover Club trademark [5] is not enough to eliminate the likelihood of confusion in this case where the products and their marks are similar because consumers typically do not engage in side by side comparison of the products. 711 F.2d at 941. Moreover, a secondary trademark on a small, inexpensive item such as a package of nuts does not eliminate the possibility of confusion because consumers exercise little care in purchasing these products. *Id.*

### B.

We previously instructed the district court that similarities in the marketing of the products and the degree of care exercised by purchasers are factors to be weighed in light of the similarity of the marks. 711 F.2d at 940–41. Both Beer

Nuts and Clover Club use their marks on sweetened salted peanuts. There is no dispute that the products are marketed in the same manner. The district court correctly understood the effect which we held those facts should have on its consideration of the issue of likelihood of confusion, stating:

> Accordingly, less similarity between the BREW NUTS package and the BEER NUTS trademark may lead to a likelihood of confusion than when the goods themselves are different or when the goods themselves are marketed differently. The court recognizes that "[t]he possibility of confusion is greatest when products reach the public by the same retail outlets," *Beer Nuts,* at 941, and that [c]onfusing similarity is most likely when the products are themselves very similar. *Id.*

605 F.Supp. at 863. Nevertheless, the district court failed to give the virtual identity of the parties' products and marketing methods proper weight. Because the marks are very similar in many respects, the virtual identity of the products and marketing methods adds strength to the position that the products are likely to be confused.

Regarding the degree of care exercised by purchasers, this court stated that "[b]uyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse. Despite a lower degree of similarity, these items are more likely to be confused than expensive items which are chosen carefully." 711 F.2d at 941 (citations omitted). The district court noted that BREW NUTS and BEER NUTS are both relatively inexpensive snack foods. 605 F.Supp. at 863. Furthermore, Clover Club's president admitted that Clover Club's BREW NUTS are purchased as impulse items in that they are not generally on a shopper's grocery list. According to this evidence and the law of this case, the district court should have concluded that the two products are purchased with little

---

**5.** We assume but do not decide that the presence of the Clover Club trademark on the BREW NUTS package can be considered in as-

sessing whether the similarity between the marks is confusing.

care and are thus likely to be confused. The district court failed to reach this conclusion and instead found that consumers exercise substantial care in purchasing the parties' products and are not likely to be confused.[6] 605 F.Supp. at 863–64. We find that the district court's conclusion is erroneous.

### C.

Clover Club's intent in adopting BREW NUTS with an overflowing stein as a trademark is also a factor in assessing likelihood of confusion. In our previous opinion, we stated:

> "Intent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of likelihood of confusion...." *Squirtco v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir.1980); *Alpha Industries v. Alpha Steel, Tube & Shapes, Inc.*, 616 F.2d 440, 446 (9th Cir.1980). "[P]roof that a defendant chose a mark with the intent of copying plaintiff's mark, standing alone, may justify an inference of confusing similarity." *Sun-Fun Products, Inc. v. Suntan Research & Development Inc.*, 656 F.2d 186, 190 (5th Cir.1981). One who adopts a mark similar to another already established in the marketplace does so at his peril, *Fotomat Corp. [v. Cochran]*, 437 F.Supp. [1431] at 1243 [ (D.C.Kan.1977) ], because the court presumes that he "can accomplish his purpose: that is, that the public will be deceived." *AMF Inc. [v. Sleekcraft Boats]*, 599 F.2d [341] at 354 [9th Cir. 1979]; *Fotomat Corp.*, 437 F.Supp. at 1243. All doubts must be resolved against him. *American Home Products*

*[v. Johnson Chemical Co., Inc.,]*, 589 F.2d [103] at 107 [2nd Cir.1978].

711 F.2d at 941. We thus instructed the district court that deliberate adoption of a similar mark may lead to an inference of intent to pass off goods as those of another which in turn supports a finding of likelihood of confusion.

The inference of intent is especially strong when the parties have had a prior relationship. Such a relationship provides evidence of the alleged infringer's intent to trade on the plaintiff's goodwill. *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 432 (5th Cir.1984). Beer Nuts' use of its trademark predated by two decades the use of the BREW NUTS trademark. Clover Club distributed BEER NUTS for many years prior to developing BREW NUTS. BEER NUTS is a very successful product. Clover Club cannot deny knowledge of the BEER NUTS trademark and the popularity of the product. Clover Club sells its product in the same markets as Beer Nuts. The names of the products are similar. The packages are similar. Clover Club's advertising agency advised against the use of the BREW NUTS trademark. The combination of these factors makes clear that Clover Club deliberately adopted a mark similar to the BEER NUTS mark.

Notwithstanding this evidence, the district court refused to draw any inference of intent, stating that "Beer Nuts presented no direct evidence that Clover Club intended to pass BREW NUTS off as the product of another and thus derive benefit from another's reputation." 605 F.Supp. at 862. The district court concluded that no inference of intent could be drawn from the

---

**6.** In reaching its conclusion, the district court relied on testimony of Clover Club's president that consumers often exercise great care in purchasing potato chips. 605 F.Supp. at 863–64. The testimony concerned a study Clover Club had conducted fifteen years earlier. The study itself was not introduced into evidence. The witness testified that the study consisted of videotapes of customers selecting potato chips in the snack food aisle of a Salt Lake City grocery store. He further testified that from the study he concluded that many people carefully examined the packages and compared them with competitors' packages before they made a selection. Given the applicable law, this testimony cannot outweigh the uncontested fact that BEER NUTS and BREW NUTS are both inexpensive snack foods purchased as impulse items.

BEER NUTS contends that the testimony concerning the study is inadmissible. Since this testimony cannot overcome the other evidence in the case, we need not rule on BEER NUTS' contention.

similarities between the trademarks because the marks are not similar. *Id.* However, as we have previously noted, the district court erred in concluding that the marks are not similar, and intent should have been inferred from that similarity.

The district court also relied on Clover Club's assertion that Frito Lay, not Beer Nuts, is its competition. 605 F.Supp. at 863. However, the inference of intent which results from the deliberate adoption of a similar trademark is not rebutted by evidence as to who the infringer's competitors might be. The ultimate question is whether there is a likelihood of confusion between the trademarks; it does not matter who the infringer identifies as its chief competitor in the market.

Because of the similarity of the marks and the inferences that should have been drawn therefrom, all doubts should have been resolved against the alleged infringer Clover Club. 711 F.2d at 941. We find no indication in the trial court opinion that this legal standard was applied to the factual inquiry.

### D.

In deciding whether likelihood of confusion exists, the district court noted that Beer Nuts presented no evidence of actual confusion. The court stated that this absence of evidence "supports the conclusion that confusion about the source of BREW NUTS is unlikely." 605 F.Supp. at 864.

While evidence of actual confusion supports a finding of likelihood of confusion, *Soweco,* 617 F.2d at 1186; *Union Carbide,* 531 F.2d at 383, absence of such evidence does *not* necessarily support a finding of *no* likelihood of confusion, especially when the products involved are inexpensive, *Sicilia Di R. Biebow & Co.,* 732 F.2d at 433. "It would be exceedingly difficult to detect instances of actual confusion when ... the goods are relatively inexpensive and their actual properties are exactly identical...." *Chevron Chem. Co. v. Voluntary Purchasing Groups,* 659 F.2d 695, 705 (5th Cir.1981), *cert. denied,* 457

U.S. 1126, 102 S.Ct. 2947, 73 L.Ed.2d 1342 (1982). Purchasers are unlikely to bother to inform the trademark owner when they are confused about an inexpensive product. *Union Carbide,* 531 F.2d at 383.

In the present case, it is undisputed that the products are inexpensive and virtually identical. Therefore, the district court erred in finding that the absence of evidence of actual confusion supports a conclusion that there is no likelihood of confusion.

### III.

The district court's finding that there is no likelihood of confusion is erroneous. Both BEER NUTS and BREW NUTS are trademarks identifying the source of the products, and Clover Club's use of the BREW NUTS mark constitutes infringement if it is likely to be confused with the BEER NUTS mark. There is clearly similarity between the trademarks. Moreover, the similarities in the products and marketing methods, the degree of care exercised by consumers and the inference of intent on the part of Clover Club suggest that the products are likely to be confused. When all of the relevant factors are considered together, we must conclude that there is a likelihood of confusion between the marks and, as a consequence, Clover Club's use of the words BREW NUTS with an overflowing stein as a trademark constitutes infringement of the BEER NUTS trademark. We REVERSE and REMAND for a determination of the relief to be granted in accordance with this opinion.