**COHERENT, INC., Plaintiff–Appellant,**

v.

**COHERENT TECHNOLOGIES, INC., Defendant–Appellee.**

No. 90–1181.

United States Court of Appeals, Tenth Circuit.

June 5, 1991.

Veronica Colby Devitt (Carol L. Smith, Limbach, Limbach & Sutton, San Francisco, Cal., and Bruce G. Klaas, Klaas & Law, Denver, Colo., with her, on the briefs), Limbach, Limbach & Sutton, San Francisco, Cal., for plaintiff-appellant.

Charles H. Jacobs (David A. Weinstein, Denver, Colo., with him, on the brief), Bourke Jacobs Luber P.C., Denver, Colo., for defendant-appellee.

Before MOORE, SETH, and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Coherent, Inc., (Coherent) filed suit against Coherent Technologies, Inc., (Coherent Technologies) alleging trademark infringement and false designation of origin under 15 U.S.C. §§ 1114 and 1125(a) (1988), and unfair competition under Colorado common law. The district court ruled against Coherent after a bench trial, deciding that Coherent Technologies' use of the word "coherent" constituted a fair use and was not likely to cause confusion. *Coherent, Inc. v. Coherent Technologies, Inc.*, 736 F.Supp. 1055 (D.Colo.1990). Because we affirm the district court's holding that there is no likelihood of confusion, Coherent has failed to establish any of its claims. Therefore, we need not address the fair use defense to infringement.

I

This dispute stems from the use of the word "coherent" by two companies which work with laser technology. The U.S. Trademark Trial and Appeal Board defined the word when it granted Coherent's first trademark registration: " '[C]oherent' means the light waves or photons are not scattered or random but are in phase in frequency and spatial relationship. It is the coherency of the radiation which results in the highly concentrated energy that makes lasers useful in a great variety of applications." The district court found

that all lasers emit coherent light to some degree, and the term is commonly used descriptively in the scientific community. That determination is not challenged on appeal.

Coherent has been manufacturing lasers and laser systems and offering services related to the use of its products since 1966. It is headquartered in Palo Alto, California, and has a subsidiary, Coherent General, in Sturbridge, Massachusetts. The company has used "COHERENT" as a trademark on goods in interstate commerce since April 3, 1973, and obtained its first federal registration of the mark on June 13, 1978. Five of Coherent's six registrations have become incontestable through continuous use for five years. 15 U.S.C. § 1065. Over the years, Coherent has spent between $200–250 million to promote products under the "COHERENT" name and mark. By dollar volume of lasers sold, Coherent occupies about twenty percent of the worldwide market.

Coherent Technologies was incorporated in 1984 and is located in Boulder, Colorado. It develops and markets coherent laser radar systems, known as lidar systems, for atmospheric sensing and target tracking, ranging, and imaging. Coherent Technologies uses lasers, such as those produced by Coherent, as components in its systems but does not produce lasers itself. Coherent Technologies does not affix its corporate name to any product. At the time of trial, it had completed one project.

## II

To properly analyze this case, we first clarify the legal significance of "COHERENT" as an incontestable mark. The district court cited a portion of 15 U.S.C. § 1115(b), which provides:

> To the extent that the right to use the registered mark has become incontestable under Section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. Such conclusive evidence shall relate to the exclusive right to use the mark on or in connection with the goods or services specified in the affidavit filed under the provisions of said Section 1065....

Describing this as an evidentiary presumption, the district court then proceeded to analyze the fair use defense, one of the enumerated defenses to use of an incontestable mark. 15 U.S.C. § 1115(b)(4). Concluding that Coherent Technologies had established fair use, the district court stated Coherent "may not rest on the incontestability of its trademarks and service marks to prove infringement." *Coherent, Inc.,* 736 F.Supp. at 1063. Next, the court found no likelihood of confusion under § 1114, which sets forth the elements of an infringement cause of action.[1] By addressing the issues in this order, the district court left unclear the relationship between incontestable status and the need to show likelihood of confusion.

◼◼◼◼ We conclude that a plaintiff with an incontestable mark must still show likelihood of confusion as an element of an infringement claim. Incontestability establishes a plaintiff's right to use a trademark, subject only to certain enumerated defenses. 15 U.S.C. §§ 1115(b)(1)–1115(b)(8). However, it does not mean that any use by

1. Section 1114 states in part:
(1) Any person who shall, without the consent of the registrant—
   (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
   (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake or to deceive,
shall be liable in a civil action by the registrant....

another party automatically constitutes infringement. Congress amended § 1115(b) in 1988, adding the clause, "[s]uch conclusive evidence of the right to use the [incontestable] registered mark shall be subject to proof of infringement as defined in section 1114." The revision clarified that "incontestability does not relieve the owner of an incontestable registration from the burden of proving likelihood of confusion." S.Rep. No. 515, 100th Cong., 2d Sess. 38, *reprinted in* 1988 U.S.Code Cong. & Admin.News 5577, 5601; *see also* 2 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 32:44, at 764 (2d ed.1988). We implicitly took this approach in *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920 (10th Cir.1986), in which we analyzed likelihood of confusion to decide whether an incontestable mark had been infringed.[2] Because incontestability does not eliminate Coherent's burden of proving likelihood of confusion to establish infringement, we resolve this issue before considering Coherent Technologies' fair use defense.

### III

■ Likelihood of confusion is a question of fact. *Beer Nuts*, 805 F.2d at 923 n. 2. Reviewing the district court's decision under the clearly erroneous standard, we affirm the finding of no likelihood of confusion.

We identified several factors relevant to likelihood of confusion in *Beer Nuts*, emphasizing that no one factor is determinative and the list is not exhaustive:

(a) the degree of similarity between the designation and the trade-mark or trade name in
　　(i) appearance;
　　(ii) pronunciation of the words used;
　　(iii) verbal translation of pictures or designs involved;
　　(iv) suggestion;
(b) the intent of the actor in adopting the designation;

(c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other;
(d) the degree of care likely to be exercised by purchasers.

805 F.2d at 925. The district court analyzed each of these factors and added two of its own, likelihood of expansion of product lines and actual confusion.

■ Despite concluding that Coherent's trademark and Coherent Technologies' trade name are similar, the district court found the other factors outweighed that similarity. Coherent Technologies adopted its name in good faith. The two companies are not competitors although their products are related because Coherent's lasers may be used in Coherent Technologies' systems. The district court found no evidence that Coherent Technologies intended to begin making lasers or that Coherent intended to expand into producing lidar systems. Although both companies have the federal government as a customer, and both have listings in the Laser Focus Buyers' Guide, the two companies otherwise market through different channels. Coherent sells its products through mass-produced catalogs and sales representatives, while Coherent Technologies relies on solicitations from parties interested in lidar systems and on proposals submitted in response to project announcements. Finally, Coherent's customers are likely to be careful buyers for several reasons: They are sophisticated persons, such as engineers, project managers and corporate officers; the price of Coherent's products and services ranges from several hundred to 1.5 million dollars with laser products averaging between $50,000 to $75,000; and laser products depend on exact specifications. Our review of the record confirms these findings.

■ Coherent maintains none of these findings precludes likelihood of confusion,

2. *See also The Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 222 (1st Cir.1989); *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 869, 871 (2d Cir.1986); *United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 137 n. 3 (3d Cir.1981); *Union Carbide Corp. v. Ever–Ready Inc.*, 531 F.2d 366, 381 (7th Cir.), *cert. denied*, 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976).

focusing its appeal on the district court's analysis of evidence regarding actual confusion.[3] We have held that surveys can be used to show actual confusion, but their evidentiary value depends on the relevance of the questions asked and the technical adequacy of the survey procedures, including how closely the survey mimics market conditions. *Jordache Enter., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1487–88 (10th Cir.1987). The district court did not clearly err in concluding that Coherent's survey did not show actual confusion because it failed to simulate decisions in the marketplace.

A sample of Coherent's customers and potential customers was asked over the phone whether they had heard of several companies, including Coherent Technologies. If interviewees responded affirmatively to a name, they were asked the location of the company headquarters.[4] Fifty-nine percent of all interviewees reported they had heard of Coherent Technologies; forty-one percent of those thought it was headquartered in California or Massachusetts, which are Coherent's locations. None mentioned Colorado, which is Coherent Technologies' home. However, as the district court succinctly stated, confusion about headquarters location "does not establish actual confusion in the marketplace, where Plaintiff and Defendant sell substantially different products and/or services through different means." 736 F.Supp. at 1067. The survey also failed to describe Coherent Technologies by its name, address, and phone number, as the court found it is described in its advertising.

Coherent cites two cases in which surveys were accepted as establishing actual confusion. However, both involved closer simulations of market conditions. In *Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 74–75 (10th Cir.1958), we found a forty percent confusion rate proof of actual confusion. The survey asked: "If you were to stop at a service station in Michigan displaying the name SOHIO as shown here, what oil company would you think put out the gas and oil sold there?" 252 F.2d at 74–75, n. 31. In *A.T. Cross Co. v. TPM Distrib., Inc.*, 226 U.S.P.Q. 521, 523–24 (D.Minn.1985), the two surveys, which yielded forty-three percent and thirty-three percent rates of confusion, showed consumers models of pens made by two companies. Because Coherent's survey did not measure marketplace confusion, neither of these cases indicates it should be given more weight.

## IV

Having reached the conclusion that the district court did not err in holding Coherent failed to establish the likelihood of confusion, the remaining issues presented for review are moot. Accordingly, the judgment of the district court is AFFIRMED.

---

3. Coherent only appeals the court's rejection of its survey evidence, not the discounting of evidence that Coherent Technologies' vice-president received several calls asking whether Coherent Technologies was affiliated with Coherent. The district court pointed out that this evidence is double-edged: It may suggest confusion, but it may also suggest awareness of a potential difference. *See Jordache Enter., Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1487 (10th Cir. 1987).

4. Interviewees were also asked how long the company had been in business or how long ago they became aware of it. Coherent does not appeal the district court's refusal to give any weight to the answers to this question. The survey consultant stated that a certain percentage did not know the location of Coherent Technologies, but reported the company had been in business or they had become aware of it more than five years ago. The district court pointed out, "Both Plaintiff *and* Defendant had been doing business for more than five years as of the date the survey was taken however. Therefore, no inference of confusion may be drawn from this data." 736 F.Supp. at 1060 n. 5.