**HEARTSPRINGS, INC., Plaintiff,**

v.

**HEARTSPRING, INC., a/k/a Institute of Logopedics, Inc., Defendant.**

No. 96–2285–JWL.

United States District Court, D. Kansas.

Dec. 16, 1996.

Joseph B. Bowman, Devon A. Rolf, Kokjer, Kircher, Bowman & Johnson, Kansas City, MO, for plaintiff Heartsprings, Inc.

Roger D. Stanton, William Bruce Day, Joseph A. Mahoney, Jr., Stinson, Mag & Fizzell, P.C., Kansas City, MO, for defendant Heartspring, Inc.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This trademark infringement suit involves plaintiff's claims against defendant for false designation of origin under the Lanham Act and common-law unfair competition. The matter is presently before the court on the parties' cross-motions for summary judgment. Because no reasonable fact-finder could conclude that defendant's use of its name and trademark creates a likelihood of confusion with plaintiff, the court denies plaintiff's motion for partial summary judgment regarding liability (Doc. # 10) and grants defendant's motion for summary judgment (Doc. # 14).

### I. Facts [1]

Plaintiff Heartsprings, Inc. was incorporated in Arizona in 1991. Plaintiff creates and distributes materials for children concerning violence prevention. In that regard, plaintiff has created prevention programs for different children's age ranges, primarily involving story workbooks, with titles such as "I Help Build Peace" and "Path of the Warrior". Plaintiff also created workbooks for children of military personnel sent to Somalia, which were distributed on military bases. Plaintiff's workbooks contain the label "Pathways to Resiliency" on the cover. The materials produced by plaintiff generally contain the

---

1. In responding to defendant's summary judgment motion, plaintiff ignored local rule 56.1, which states:

A memorandum in opposition to a motion for summary judgment shall begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed. All material facts set forth in the statement

of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

D.Kan. Rule 56.1. Plaintiff's response contained no fact section. Defendant urges the court to deem its statement of facts admitted. Because plaintiff has filed its own summary judgment motion, the court will consider plaintiff's statement of facts in determining whether a genuine controversy exists. Plaintiff's counsel is strongly admonished to follow the local rule in the future, however.

name "Heartsprings" only in connection with copyright information and plaintiff's address.

Defendant Heartspring is a private, non-profit organization located in Wichita, Kansas. Defendant operates a Residential School Program for children with severe disabilities such as autism, Down's syndrome, and mental retardation. Admission to this program requires that a child have multiple disabilities. Children with behavioral disorders stemming solely from psychological sources are referred elsewhere. The program costs from $90,000 to $150,000 per student per year. Defendant also operates an outpatient assessment and treatment center for children with developmental delays or disabilities and an audiological testing and intervention center for people with hearing loss.

Before January 1993, defendant was known as the Institute of Logopedics. Defendant decided to change its name because the meaning of "logopedics" was unclear and it didn't like the connotation of "institute". In seeking a name that would invoke positive feelings about children, defendant created a list of 50 to 60 names, a few of which were presented to focus groups. After "Heartspring" was chosen, an attorney's trademark search failed to reveal plaintiff's use of a similar name. Defendant adopted the new name and logo, which contained the name in purple block lettering with a purple and teal heart design. Defendant spent eight months and over $10,000 choosing its new name, and in 1993 and 1994 it spent almost $200,000 advertising its services to the public under the name.

On July 12, 1993, defendant applied for service mark registration for "Heartspring" with the United States Patent and Trademark Office. Defendant's application was published, and on April 4, 1994, plaintiff filed a notice of opposition. The opposition proceedings were suspended upon the filing of the present suit on June 14, 1996.

## II. Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.,* 54 F.3d 624, 628 (10th Cir.1995). A moving party that also bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.,* 58 F.3d 533, 536 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed. R.Civ.P. 1).

## III. Analysis

The Lanham Act imposes civil liability on any company that uses, in connection with goods or services, a term or symbol or "false designation of origin" that is "likely to cause confusion" regarding another company. 15 U.S.C. § 1125(a). Thus, the same "likelihood of confusion" test applies to a claim of false designation of origin under this section as to a claim for infringement of a registered trademark under 15 U.S.C. § 1114(a). *Amoco Oil Co. v. Rainbow Snow,* 748 F.2d 556, 558 (10th Cir.1984). This test also governs plaintiff's common-law claim. *See Jordache Enters. v. Hogg Wyld, Ltd.,* 828 F.2d 1482, 1484 n. 2 (10th Cir.1987).

"The party alleging infringement has the burden of proving likelihood of confusion."

*Id.* at 1484. Thus, plaintiff must demonstrate that defendant's use of the name "Heartspring" is likely to cause consumers to believe either that plaintiff is the source of defendant's services (direct confusion) or that defendant is the source of plaintiff's products and services (reverse confusion). *See Universal Money Ctrs. v. American Tele. & Telegraph Co.,* 22 F.3d 1527, 1530 (10th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). The necessary confusion could also result "from a mistaken belief in common sponsorship or affiliation." *Amoco Oil,* 748 F.2d at 558. "Confusion occurs when consumers make an incorrect mental association between the involved commercial products or their producers." *Jordache,* 828 F.2d at 1484.

In determining whether there is a likelihood of confusion between two trademarks or trade names, the court must consider the following factors: "(a) the degree of similarity between the marks; (b) the intent of the alleged infringer in adopting its mark; (c) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (d) the degree of care likely to be exercised by purchasers; (e) evidence of actual confusion; and (f) the strength or weakness of the marks." *First Sav. Bank v. First Bank Sys., Inc.,* 101 F.3d 645, 652 (10th Cir.1996); *accord Universal Money,* 22 F.3d at 1530. "This list is not exhaustive. All of the factors are interrelated, and no one factor is dispositive." *Jordache,* 828 F.2d at 1484. The ultimate question in this case is whether defendant's use of the name "Heartspring" is likely to cause the public to believe there is an affiliation between defendant and plaintiff. *See First Sav. Bank,* at 652.

■ In the Tenth Circuit, likelihood of confusion is a question of fact. *Beer Nuts, Inc. v. Clover Club Foods Co. (Beer Nuts II),* 805 F.2d 920, 923 n. 2 (10th Cir.1986). The Tenth Circuit has stressed, however, that summary judgment may be granted in trademark infringement cases when appropriate:

[C]ourts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion as to source. Though likelihood of confusion is frequently a fairly disputed issue of fact on which reasonable minds may differ, the issue is amenable to summary judgment in appropriate cases.

*Universal Money,* 22 F.3d at 1530 n. 2 (quoting *Warner Bros. v. American Broadcasting Cos.,* 720 F.2d 231, 246 (2d Cir.1983)).

### Degree of Similarity

■ With respect to the first "likelihood of confusion" factor, the Tenth Circuit has stated as follows:

The degree of similarity between marks is tested on three levels as encountered in the marketplace: sight, sound, and meaning. In evaluating similarity, we must not engage in a "side-by-side" comparison. Rather, the court must determine whether the alleged infringing mark will be confusing to the public when singly presented. Further, similarities between marks should be given more weight than differences.

*Universal Money,* 22 F.3d at 1530–31 (citations omitted). Defendant's name is virtually identical to that of plaintiff, distinguished only by the omission of the final letter "s". Thus, there is great similarity in the sight and sound of the names. Moreover, the names, chosen to connote positive, "warm and fuzzy" feelings, have similar meanings.

This factor does not weigh in plaintiff's favor as much as would first appear, however. A company trademark is to be considered as a whole. *Id.* at 1531. Defendant's name is generally presented in purple block lettering and accompanied by a purple and teal heart logo. Plaintiff's name is presented in ordinary type or, when used on letterhead or business cards, in a large script. Accordingly, the marks are somewhat visually distinct. *See First Sav. Bank,* at 653 (noting apparent visual differences in marks containing similar words).

### Intent of Defendant

■ The next factor concerns the intent of defendant in adopting its name and trademark. "[D]eliberate adoption of a similar mark may lead to an inference of intent to

pass off goods as those of another which in turn supports a finding of likelihood of confusion." *Beer Nuts II*, 805 F.2d at 927. Mere knowledge of a similar mark, on the other hand, does not foreclose further inquiry. *Universal Money*, 22 F.3d at 1532. "The proper focus is whether defendant had the intent to derive benefit from the reputation or goodwill of plaintiff." *Jordache*, 828 F.2d at 1485.

This factor weighs in defendant's favor. There is no evidence that defendant intended to take advantage of plaintiff's having a similar name. In fact, the evidence indicates that, despite a diligent search, defendant did not even know of plaintiff's use. *See Universal Money*, 22 F.3d at 1531–32 (noting defendant's counsel's trademark search in consideration of intent factor). In addition, the fact that defendant spent considerable sums promoting its services under its new name strongly suggests that defendant is relying on its own goodwill and reputation, and not that of plaintiff. *See id.* at 1532; *see also First Sav. Bank*, at 655 (lack of evidence of defendant's intent to benefit from other's reputation and evidence indicating defendant's intent to establish its own goodwill and reputation in the mark at issue weighed against a finding of likelihood of confusion).

### Relation in Use and Manner of Marketing of Goods/Services

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Universal Money,* 22 F.3d at 1532. Plaintiff argues that the parties' goods and services are similar because both parties target children (and their parents) generally and children with developmental problems particularly.

The differences between the parties' products far outweigh the similarities, however, and militate against a finding of likelihood of confusion. Defendant provides services for a particular group of consumers, i.e., children with severe physical disabilities. Plaintiff

provides goods aimed at teaching violence prevention to *all* children within certain age ranges. Plaintiff's materials do address behavior modification, but only in the context of violence prevention; they do not address the types of basic skills training undertaken by defendant. Plaintiff does not produce goods intended for severely physically disabled children. Plaintiff contends that it does cater to developmentally disabled children in its products; for example, Dr. Dennis Embry, plaintiff's founder, testified by deposition that plaintiff has published materials for children with such conditions as attention deficit disorder, conduct disorders, and depression. Defendant, however, does not treat children with developmental disorders unless they result from physical disabilities. Thus the parties are not competitors and do not provide products for the same groups of consumers.[2]

The parties' goods and services are also marketed in different ways. Plaintiff notes that both parties generally promote themselves by way of newspapers, brochures, and direct mail. The marketing efforts of the parties are properly distinguished, however, by the parties' particular targets—educators, military personnel and parents generally for plaintiff, parents of disabled children for defendant.

Defendant also points out that plaintiff uses "Heartsprings" almost exclusively as a trade name to identify the corporate entity rather than as a trademark in connection with its products. Defendant is mistaken in its belief that plaintiff is therefore not entitled to statutory protection. *See Value House v. Phillips Mercantile Co.*, 523 F.2d 424, 425 n. 2 (10th Cir.1975) (precise difference between trademarks and trade names is immaterial because "the law protects against the appropriation of either upon the same fundamental principles"); 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 9.01[2], [4] (3d ed. 1995) ("protection of business, corporate and professional names is subject to the same limitations and conditions as trademarks";

---

**2.** In further support of its position, plaintiff points to the fact that some of its workbooks contain a drawing of a boy in a wheelchair on their covers. It is clear, however, that the drawing, which also included children of various eth-

nic backgrounds, was intended to suggest diversity. In that way, the drawing lends further support to the conclusion that plaintiff intended its programs for *all* children.

15 U.S.C. § 1125(a) may be used to assert infringement of a trade name).

Plaintiff's predominant use of "Heartsprings" as its trade name may be considered as a factor weighing against a finding of likelihood of confusion, however. *See* 1 McCarthy, *supra,* § 9.01[3] (because the basic issue is likelihood of confusion, it is important to consider whether the corporate name is known to the relevant class of consumers). Here, plaintiff's name is not before the consumer in any meaningful way. Instead, it is clear that plaintiff's products are identified by and promoted under the "Peace Builders" and "Pathways to Resiliency" labels. Accordingly, there is little likelihood of the public's confusing the goods and services offered by the parties.

The court concludes that this factor weighs strongly in favor of defendant.

### Degree of Care

The fourth factor weighs heavily against a finding of likelihood of confusion because of the great care likely to be exercised by consumers in selecting plaintiff's goods and, in particular, defendant's services. Educators and parents would undoubtedly choose materials such as those produced by plaintiff more carefully than the average person chooses the usual consumer goods. Parents choosing treatment and education for severely disabled children must be particularly selective and sophisticated. The extremely high cost of defendant's services further supports defendant's position. With respect to this factor, the Tenth Circuit has stated:

> Buyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse. Despite a lower degree of similarity, these items are more likely to be confused than expensive items which are chosen carefully.

*Beer Nuts, Inc. v. Clover Club Foods Co. (Beer Nuts I),* 711 F.2d 934, 941 (10th Cir. 1983); *see also Coherent, Inc. v. Coherent Technologies, Inc.,* 935 F.2d 1122, 1125 (10th Cir.1991) (high degree of care where sophisticated persons purchased very expensive goods and services requiring exact specifications). The high degree of care needed by consumers purchasing the goods and services here makes confusion between the parties' marks and names unlikely.

Plaintiff argues that donors will exercise less care in making contributions to the parties. It may be true that a donor generally will not investigate the source of a request for a charitable contribution as vigorously as a consumer would determine the source of a particular product. It is significant here, however, that plaintiff does not appear to be a non-profit organization[3] like defendant that solicits donations from the general public. Rather, the evidence indicates that plaintiff seeks sponsorship for specific children's programs. It would seem that companies helping to fund programs produced by a for-profit corporation are far more likely to be certain of the programs' source than the typical charitable donor for whom the tax deduction might be the pivotal incentive. Thus, the fact that both parties solicit funds from non-consumers does not create a likelihood of confusion between the parties' marks or trade names.

### Actual Confusion

■ "Actual confusion in the marketplace is often considered the best evidence of likelihood of confusion." *Universal Money,* 22 F.3d at 1534. "Nevertheless, evidence of some actual confusion does not dictate a finding of likelihood of confusion." *Id.* at 1535.

Plaintiff has submitted deposition testimony purportedly relating five instances of actual confusion. Dr. Embry testified that after he appeared before two Kansas legislative committees, someone asked whether he was connected with Heartspring in Wichita. Likewise, after a meeting with an aide to Senator Dole in Washington, the aide asked how Dr. Embry was involved with Heartspring in Wichita. After an article about a national barbershop quartet association's local fundraiser mentioned defendant as the association's national charity, Dr. Embry's travel agent and his accountant both called and professed ignorance of

---

**3.** The articles of incorporation for plaintiff do not indicate that plaintiff operates on a not-for-profit basis, nor has plaintiff alleged in any of its submissions that it is a not-for-profit entity.

plaintiff's having a fundraiser. Finally, Michael Krupnick, plaintiff's president, testified that a friend had seen the article and asked what plaintiff was doing in Kansas.[4]

■ Defendant argues that the testimony about these incidents constitutes inadmissible hearsay. Such evidence is admissible, however, because it is offered to show the declarants' then-existing state of mind. *Jordache*, 828 F.2d at 1487; *see also Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1160 n. 10 (5th Cir.1982) (such testimony about customer inquiries is not hearsay because it is not offered to prove the truth of the matter asserted).

Nevertheless, defendant's evidence is entitled to little weight. The instances cited by plaintiff represent only isolated instances of possible confusion. Noticeably absent is any evidence of surveys conducted among potential consumers to determine actual confusion. *See Coherent, Inc.*, 935 F.2d at 1126; *Jordache*, 828 F.2d at 1487–88. The Tenth Circuit has stated:

> The better view would seem to be that while customer enquiry evidence is admissible and relevant, standing alone with no other evidence it is insufficient proof of actual confusion.

*Jordache*, 828 F.2d at 1487 (quoting 2 McCarthy, *supra*, § 23:2(B)). Moreover, plaintiff's evidence concerns random acquaintances and not consumers of the parties' products. The evidence of actual confusion is thus de minimis. "De minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding likelihood of confusion." *Universal Money*, 22 F.3d at 1535 (finding isolated instances of actual confusion to be de minimis).

Finally, plaintiff's evidence is double-edged—"[i]t may suggest confusion, but it may also suggest awareness of a potential difference." *Coherent, Inc.*, 935 F.2d at 1126 n. 3. Accordingly, because plaintiff has failed to present credible evidence of actual confusion, this factor must be weighed in defendant's favor.

### Strength of Marks

The relative strength of the marks here weighs in plaintiff's favor. "The stronger the mark, the more likely it is that encroachment on it will produce confusion." *First Sav. Bank*, at 653. "A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties." *Universal Money*, 22 F.3d at 1533.

■ Terms fall into four categories, listed here from weakest to strongest: generic, descriptive, suggestive, and arbitrary or fanciful. *First Sav. Bank*, at 654–55. "Heartspring" and "Heartsprings" are invented words, but their components project a certain meaning intended by the parties; thus, the marks are suggestive and relatively strong.

### Summary

The names at issue here are very similar and represent strong marks, but the other factors outweigh those considerations. The parties are not competitors, and their products and services are dissimilar and geared toward distinct populations. Defendant provides very expensive services, the purchase of which requires an especially high degree of sophistication and care. In addition, plaintiff's trade name, "Heartsprings," has not been placed before consumers in a meaningful way because plaintiff's products are generally identified by other labels. Finally, plaintiff has presented little evidence of actual confusion.

In *Coherent, Inc.*, the court upheld the district court's finding that no likelihood of confusion existed, even though the parties names were almost identical. 935 F.2d at 1125–26. The court noted that the defendant had adopted its name in good faith, the parties were not competitors, they marketed through different channels, and plaintiff's customers were likely to be careful buyers.

---

4. Plaintiff also points to a document produced by the barbershop quartet group that mistakenly referred to defendant as "Heartsprings." This reference, however, likely a typographical error, does not show actual confusion by the group of defendant with plaintiff.

*Id.* at 1125; *see also Beer Nuts II,* 805 F.2d at 925 ("[V]ery similar marks may not generate confusion as to the source of the products where the products are very different or relatively expensive."). In the same way here, the mere similarity between the names is not enough. No reasonable fact-finder could conclude that a likelihood of confusion exists, and summary judgment is therefore appropriate for defendant. *See Universal Money,* 22 F.3d at 1536 (affirming summary judgment where no likelihood of confusion existed as a matter of law).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for partial summary judgment is denied.

**IT IS FURTHER ORDERED THAT** defendant's motion for summary judgment is granted, and plaintiff's claims are hereby dismissed.

**IT IS SO ORDERED.**